YOUNG *et al. vs.* THE STATE OF GEORGIA.

1. When a man has an intent to commit a certain crime, and does an act concurrent with the intent sufficient to constitute a lesser crime of the same nature, and repents or desists from his first intention, he is still indictable for the lesser offence. If, however, he abandons his evil intention at any time before so much of the act was done as constitutes a crime, such abandonment takes from what has been done its indictable quality.
2. Though the evidence is rather weak to sustain a verdict of assault with intent to murder, yet as the jury found the defendants guilty, and the judge who tried the case was satisfied with the verdict it will not be disturbed.

July 8, 1889.

Criminal law. Assault with intent to murder. Charge of court. New trial. Verdict. Evidence. Before Judge BOWER. Decatur superior court. November term, 1888.

John McRae and Ed. Young were indicted for assault with intent to murder, alleged to have been committed upon J. B. Lasseter and H. A. Logue. The evidence introduced for the State tended to show the following: Lasseter was the marshal of the town of Whigham, and Logue was a deputy whom Lasseter had asked to assist him in arresting Young. Lasseter had attempted to arrest Young the day before, and he made his escape. When they went to arrest Young on the day this assault was charged to have been committed, Logue was the person who actually made the arrest, Lasseter staying a little behind. Young resisted when Logue attempted to arrest him, striking at Logue with

a stick, but when Logue cocked his pistol, he said he would give up. Logue got hold of one of Young's arms and Lasseter the other, and they were carrying him along the road when McRae came up behind them and struck Logue in the back with a hickory stick. Thereupon Young grabbed Logue around the waist and held his hands down by his side so that he could not use his club and pistol. While Young thus held him, McRae struck him twice over the right eye, and then turned on Lasseter (who testified that he was not doing anything at all), and struck him with the stick several times, striking at his head. Lasseter warded off the licks from his head with his arm. McRae held the stick in both hands and came overhanded, and finally succeeded in striking Lasseter one lick on the head. The stick was about the ordinary length of a walking cane, and about one and a half inches in diameter at the big end and about three fourths of an inch at the little end, and he hit both Logue and Lasseter with the big end. What was the offence for which Young was arrested does not appear. No weapon of any kind was used by either Logue or Lasseter, and no pistol was drawn by Logue. Lasseter testified that no one else was present when the difficulty occurred but the parties mentioned; that when McRae struck him, he (Lasseter) ran to Logue and fell into a little gully; that Logue did not try to draw his pistol when Young put his arms around him, and he supposed Young did this to keep him from drawing his pistol; that Young did not ask Logue not to shoot anybody; that when McRae was hitting Logue, he said if the latter would give up the pistol he would not hit him any more, and finally agreed that Logue should give the pistol to Lasseter, and Lasseter lifted up Young's arm and took the pistol out; that McRae stopped striking of his own volition;

v 82-48

and that Young was going along quietly at the time McRae came up.    Logue swore that as they were carrying Young along, Young was pulling back and cursing, and witness heard something dash up behind him, and as he looked around McRae came running up with the stick, and before he could speak or do anything had struck him in the eye, and when he struck, Young grabbed him, etc.; that Young did not say anything about his not shooting; and that he did not attempt to shoot anybody or draw his pistol before he was hit, and afterwards could not get his pistol out because Young held him.    Young did not hit Lasseter or Logue.    One Quinn testified that on the night before this difficulty, he saw McRae and told him not to have anything to do with the fuss between Young and the marshal, and McRae said that if Ed. Young was in any trouble, " he was on the ground," or " with him," or something about like that.

The testimony for the defendants tended to show that, when Young was being carried along by Lasseter and Logue, they were met by McRae, who told Young it looked like they had him "in a tight," and asked Young what it was about; that Logue asked McRae what he had to do with it, and McRae said, "Nothing at all," and Logue said, "Yes you have," and ran his hand in his pants pocket, and McRae said, "What are you going to do?" and Logue said, "Never you mind," and McRae saw a pistol handle coming out of Logue's pocket, and then struck him; that Lasseter said, "Shoot him," and McRae ran to Logue again; that Young said, "This man is going to shoot you," and Young had Logue fastened with his hand on his pistol in his pocket; that some bystanders said, "They are going to kill Ed. and John both," and McRae ran up behind Logue and said, "Don't you shoot"; that Lasseter

started up, asking Logue to give him the pistol and saying he would shoot; that McRae saw Lasseter draw back like he was going to hit him, but did not know what Lasseter had in his hand, and struck Lasseter, and Lasseter in going to Logue fell in a little ditch and hurt his arm; that Young held Logue to keep him from shooting both McRae and Young, etc., and Lasseter asked, if he got the pistol from Logue, would McRae make Young come on, to which McRae replied that he had nothing to do with Young; that Young told Lasseter if Logue would give up the pistol he would turn Logue loose, and Logue did so; that Young went on with them and McRae went on to his home; and that McRae could have beaten Lasseter and Logue longer if he had wished to do so. McRae's father testified that the stick was a size larger than his forefinger and was an ordinary walking-stick; that witness asked the deputy-sheriff, to whom the stick was delivered, to keep it to show in court; and that he saw Logue take a drink and Lasseter take several the night before the difficulty, and could smell whiskey on Lasseter's breath on the next morning.

The defendants were both found guilty. They moved for a new trial on the grounds stated in the decision, among others; and this motion having been denied, they excepted.

D. A. RUSSELL, by HARRISON & PEEPLES, for plaintiffs in error.

No appearance for the State.

SIMMONS, Justice.

1. McRae and Young were tried and convicted of assault with intent to murder. The main grounds ar-

gued by the counsel for the plaintiffs in error, for rever-
sal of the judgment of the trial court in refusing to
grant the motion for a new trial, were the 3d and 4th
grounds of the motion, which are as follows :

(3) Error in refusing to give in charge to the jury
the following request of counsel for the defendants :
" If the defendants, or either of them charged with in-
tent to murder, could have done the murder, and yet
did not do it, and nothing prevented him or them and
they desisted of their own accord, then the true theory
of the law is that the acts are not assault with intent to
commit murder, but are assault and battery." This re-
quest the court gave, but with the following qualifica-
tion : " Unless the acts committed prior to desisting
amount to assault with intent to murder." The refusal
to give the charge as requested, without qualification,
and the qualifying of the same as above stated, is al-
leged to be error.

(4) Error in refusing to charge the jury as requested,
without qualification : " If the defendants, or either of
them, began the difficulty with the intention of murder-
ing either of the parties named in the bill of indictment,
and after pursuing that intent to any point short of
consummation of that intent, and then by agreement or
other reason repented and desisted from the accomplish-
ment of the act of murder, then he is not guilty of the
assault with intent to commit murder." And error in
qualifying this request as follows : " Unless the acts
already committed before desisting amount to assault
with intent to commit murder."

We think the court was right in qualifying the request
to charge as he did. When a man has an intent to commit
a certain crime, and does an act concurrent with the in-
tent sufficient to constitute a lesser crime of the same na-
ture, and repents or desists from his first intention, he is

still indictable for the lesser offence. " If, however, he abandons his evil intention at any time before so much of the act is done as constitutes a crime, such abandonment takes from what has been done its indictable quality." Stephens *vs.* The State, 107 Ind. 189; 1 Bish. Crim. Law, §§208(a), 733, 766; Am. & Eng. Encyc. of L. 677.

2. The next ground insisted on by counsel for the plaintiff in error was, that the verdict was contrary to the evidence. We have read the evidence carefully, and we affirm the judgment of the trial judge very reluctantly. It seems to us that the evidence is rather weak to sustain the charge of assault with intent to murder, but that it makes out a case of aggravated assault and battery. But as the jury found the defendants guilty, and the judge who tried the case was satisfied with their verdict, we conform to the uniform rulings of this court and will not disturb their finding on this ground.

Judgment affirmed.