Rev. Robert HUNTER, Rev. Elroy Embry, James Gibson, Southern Christian Leadership Conference, Inc., Henry Bass, the Atlanta Workshop in Non-Violence, and all others similarly situated

v.

Ivan ALLEN, Jr., Mayor of the City of Atlanta, Georgia, Herbert T. Jenkins, Police Chief of the City of Atlanta, Georgia, and J. R. Shattles, Police Officer of the City of Atlanta, Georgia.

No. 11328.

United States District Court
N. D. Georgia,
Atlanta Division.

May 20, 1968.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for plaintiffs.

Henry L. Bowden, Martin McFarland, Atlanta, Ga., for defendants.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SIDNEY O. SMITH, Jr., District Judge.

This is a class action brought by the above named individuals, the Southern Christian Leadership Conference, Inc.

and the Atlanta Workshop in Non-Violence, as well as all Negro residents of Atlanta similarly situated against Mayor Allen, Chief of Police Jenkins, and Police Officer Shattles, both individually and in their designated capacities. Plaintiffs allege that jurisdiction arises under 28 U.S.C.A. §§ 1331(a), 1343(3) and (4), 2201 and 2202; 42 U.S.C.A. §§ 1981, 1983, and 1985; the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000d et seq. and 2000e et seq. and the Constitution of the United States (1st, 4th, 5th, 6th, 8th, 9th, 10th, 13th and 14th Amendments). The heart of the complaint is that the named defendants have used the disorderly conduct ordinance of Atlanta, which is allegedly invalid and unconstitutional, to deprive the plaintiffs of their constitutionally guaranteed rights. Plaintiffs allege that they have been attempting through peaceful and nonviolent means to achieve the elimination of all forms of racial segregation, that these activities, though constitutionally protected, have been unlawfully interfered with by the named defendants and that these defendants threaten to continue this interference unless restrained. Plaintiffs pray for interlocutory and permanent injunctive relief as well as declaratory relief against the enforcement of and continued existence of § 20-7, "Disorderly Conduct" provisions of Atlanta's Municipal Code.

## THE FACTS

This case arises out of two separate and distinct sets of facts. Case number one involves the conviction of Henry Bass, Susan Bass, Ron Ausburn, Jim Gehres and John Jacobs for violation of subsection (q) of Section 20-7 of the Disorderly Conduct Ordinance of Atlanta, Georgia. These and other persons, all members of the Atlanta Workshop in Non-Violence, an unincorporated membership association "devoted to the cause of world peace and the solution of national and international problems and controversies by non-violent means" on the morning of October 16, 1967, in a protest against the war in Vietnam sat down and blocked the front doors of a privately owned building at 900 Peachtree Street, N.E., Atlanta. This building contained several of Atlanta's Selective Service Local Boards. The building custodian, R. M. Lander, attempted repeatedly to leave the building through the front door but the above mentioned persons continued to block the doors. These persons refused to move and finally were placed under arrest and charged with violating Section 20-7(q). At their trial they were informed that they were charged with violation of § 20-7(q) and five of the group were convicted, fined $250.00 and sentenced to sixty days in jail. Thirty days of the sentences were suspended on condition that neither they nor any members of their group were convicted of any violation of federal, state, or municipal laws. The trial judge refused to allow counsel to prove that the racial composition of the draft boards within the building was such that they were illegally composed.

Case number two relates to the arrest and conviction of Rev. Embry, Rev. Hunter, and James Gibson, members of the Southern Christian Leadership Conference. These persons were arrested while protesting the construction of portable classrooms at Turner High and were convicted of violating § 20-7. On October 24, 1967, J. R. Mathis, who was hired to construct these classrooms, arrived at the school to begin work. He found that the entranceway gate was blocked by the car of Rev. Embry. After requests for the removal of the car, the police arrested Rev. Embry and impounded his car. He was convicted of violating § 20-7(q) and (r). Defendants now purport to disavow the finding of guilty under subsection (r) because Embry had no notice of that charge at the time the case was originally tried. Soon after Rev. Embry's arrest, Rev. Hunter and Gibson stepped in front of the Mathis vehicle and refused to move. For this continued refusal to move, these two were also arrested and subsequently convicted under § 20-7(q).

## THE CONTENTIONS

Having briefly viewed the facts, it is necessary to examine the precise relief requested by each party and the contentions of the parties arising therefrom. Plaintiff has asked that § 20–7 of the Charter, Related Laws, and Code of Ordinances of the City of Atlanta be declared unconstitutional.[1] This section represents the so-called "Disorderly Conduct" provision of the Atlanta ordinances. Plaintiffs contend that the ordinance is so sweeping, inclusive and over-broad as to be facially unconstitutional. Plaintiffs contend that this ordinance is basically the same, and equally as objectionable, as the ordinance struck down in Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967). The following terms which appear in the new section are singled out and described as "forbidden terms" and as "sweeping terms": (1) angry threats (sub-section c); (2) riotous conduct (sub-section d); (3) congregate (subsections e, h, p, r); (4) danger, endanger (subsections a, b, c, d, n); (5) abusive (subsection a); outraged (subsection o); unlawful purposes (subsection g); violent (subsections a, b, c, q); tumultous (subsections a, b); and obscene (subsection 1). Plaintiffs stress that their activities are of a nature protected by the first amendment: picketing, presenting their grievances to the government, leafletting. The vice of the Atlanta statute attacked is that the terms of this statute are inherently subjective and broad and therefore subject to an extraordinary sweep in the hands of those charged with applying them. For purposes of their summary judgment, it is contended that there are no material disputes as to the facts, i. e., the statute is unconstitutional on its face. By virtue of the nature of their activities and the continued threat that this statute and its enforcement poses, plaintiffs contend that there is present a concrete adversity of interest. As a logical extension of the above, plaintiffs show that under the case of Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) and its predecessors, the Court has no discretion to abstain from deciding the merits of plaintiffs' claims. Finally, plaintiffs contend that their challenge validly extends to the ordinance in its entirety. Plaintiffs argue that the disorderly conduct ordinance is a unity, that it is not a loose association of disparate elements but rather it is a tightly-knit union of subsections designed to reach one and the same end in full cooperation with each other. Plaintiffs illustrate at length the interconnection between these subsections and rely heavily upon the practice of the Municipal Court of Atlanta wherein the judge has the right, or at least purports to have the right, to alter the formal charge to fit the particular violation established by the evidence.

On the other hand defendants contend that the Court does not have jurisdiction to pass on the constitutionality of any other subsection of § 20–7 except subsection (q). Defendants claim to have disavowed conviction under § 20–7(r), for the failure to give notice of that charge before trial. Defendants contend that there is no justiciable controversy as to the other subsections. It is defendants' position that subsection (q) is constitutional, for it is geared towards protecting the right of every citizen to engage in a lawful business without interference of a violent nature. Moreover, the defendants argue that they are entitled to injunctive relief against: (1) the continued violation of the civil rights of Mathis and all those workers similarly situated; (2) the continued violation of the civil rights of Landers and all those similarly situated; (3) the continued violation of section 20–7(q); the plaintiffs continuing to conduct themselves in any manner or in any way which

---

1. Plaintiff concedes that subsections (h), (i), (j) and (m) do not have the requisite obvious facial applicability to protected activity. Therefore, the Court's references throughout this order to § 20–7 will automatically, unless otherwise indicated, exclude these four subsections. The entire text of § 20–7 is included as Exhibit A.

would affect or diminish the fundamental constitutional rights guaranteed under the Constitution of all those persons named above.

## JURISDICTION

■ The court is convinced that it cannot properly abstain from deciding the merits of plaintiff's claim, i. e. the claim that the Atlanta Ordinance is on its face unconstitutional in that its overbreadth results in (or could result in) an invasion of First Amendment protected activities. This conclusion is dictated by the decision in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) and its predecessors.

■ On the other hand, the individual plaintiffs stand convicted and sentenced in the municipal courts and such convictions have not been appealed. Consequently, there is no power in the federal courts to set aside or correct any previous such conviction as being illegal on constitutional grounds or as being improper in that conviction was had under the wrong section of the ordinance. The proceedings here cannot substitute for an orderly appeal.

In such posture, the case is subject to declaratory relief on First Amendment grounds only and the proper inquiry is whether the ordinance violates the First Amendment on its face or in its "chilling effect" as threatened. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) and its progeny.

Even so, a difficult threshold question is whether plaintiffs have standing to attack the entire ordinance or merely the sections under which they stand convicted.

To argue for a limitation of this order to one of the subsections is to misunderstand the crux of the complaint. Plaintiffs contend that all of the subsections are so overbroad as to chill their exercise of first amendment privileges. This must be viewed in the context of the past history of this ordinance. Originally, it consisted of one section, but after being declared unconstitutional, it was divided into a number of subsections. Moreover, the interrelationship between most of these subsections is obvious. If most of the sections (excepting those previously mentioned at fn. 1) are not dealt with in this opinion, then plaintiffs' activities may arguably be interfered with by defendants; subsequently, resulting in needless litigation over the same rights.

■■ Under such circumstances, the court is constrained to test the ordinance in its entirety, excluding only those sections not attacked (h, i, j, and m) and those which could not arguably relate to First Amendment rights (k).[2]

■ In connection with such inquiry, the court is mindful of the fact that many substantive criminal offenses are the subject of other ordinances and that the principles of "aiding and abetting" may be used to secure arrest and convictions thereunder. Further, the Court takes judicial notice of the existence of the state criminal law covering many offenses which may be utilized to punish what, in lay terms, may be considered as "disorderly conduct."

## THE HOLDING

■ Turning then to a consideration of the pertinent sections of the ordinance, there are certain principles which are evolving relating to proper and improper attempts to restrict the exercise of free speech and free assembly. See Cox v. State of Louisiana, 379 U.S. 536 and 559, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). While the line is sometimes fine, the presence of violence or the clear danger to persons or property normally is a sufficient basis for restriction.

2. Non First Amendment claims are normally the subject of defense in the event of prosecution. Cf. City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Note, Bad Faith Prosecutions of Civil Rights Matters in State Courts—Future Developments of Injunctive Relief in Federal Courts, 1 GA.L.REV. 656 (1967).

Such foundation for a disorderly conduct statute is both permissible and even a desirable technique. Nor need such statutes negate every possible defense, such as the licensed violence of sports events. Most criminal statutes are subject to affirmative though unspecified defenses, i. e. absence of criminal intent, self-defense, performance of official duty, entrapment, etc. Thus, then, in the area of violence and/or danger, statutes are normally upheld. See e. g. Landry v. Daley, 280 F.Supp. 968 (N.D.Ill., March 4, 1968); Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky.1967). Moreover, the Supreme Court has demonstrated that violence or conduct (as opposed to mere speech) causing violence goes beyond the protected area of free speech and free assembly. See e. g. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (April 22, 1968); Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Feiner v. People of State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951); Carmichael v. Allen, 267 F.Supp. 985 (N.D. Ga.1967) (where the court dealt with the predecessor of this statute).

Tested on the above, the following sections, while at times inartfully drawn, are valid: (a),[3] (b), (d), (o) and (q). In this connection, it will be noted that (o) goes even beyond the ordinance approved in Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), cited with approval in Cox v. State of Louisiana, supra, in that an act of violence must erupt from the "fighting words." It is concluded that each of the above sections "clearly and precisely delineates its reach in words of common understanding." See Cameron v. Johnson, supra. In this connection, the broad assertion that the word violence has a stained meaning in Georgia jurisprudence is rejected. The authorities are legion in every jurisdiction which give the word sufficient common understanding to sustain hundreds of criminal statutes. Moreover, if particular conduct is disputed as violent, it is a proper matter to raise for determination in a trial in that case.

In the court's opinion, the following sections attempting to deal with violence and danger must fall: (c), (f), and (n). The vice of each is the failure to proscribe conduct within sufficiently precise and narrowly drawn limits evincing an objective determination of prohibited conduct. See Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). In short, the standards are overwhelmingly subjective. What is an "angry threat"? What is "abusive" conduct? What is "roughly crowding"? What is a "dangerous manner"? The reaction of some unknown third party could determine the guilt or innocence of the accused. See Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1948). Accordingly, they must yield to the need for some ascertainable objective standards. Section (c) in part is good, but repetitious of (a) and (b). Moreover, there is ample basis for public protection in the existing assault and assault and battery provisions of state law for any punishable offense which might be covered by these sections.

A second group of sections, as presently drawn, impinge on freedom of assembly. This for the reason that they omit the commission of some overt act as a prerequisite for arrest and conviction. The sections are (e), (g) and (p). The court is constrained to believe that the First Amendment permits assembly even for unlawful purposes so

---

3. Though subsection (a) is held to be valid, the Court is constrained to comment that the use of the word "fear" substantially weakens the subsection, for this subjects the subsection to the criticism found in Terminiello v. City of Chicago, infra. This subsection is distinguishable from *Terminiello*, for it requires that the person act first in a violent manner. A better construction, it would seem, would be to substitute the word "danger" for "fear" ("whereby any person's life, limb or health is placed in danger of harm") or another such substitution which would replace the subjective test of "fear" with a more objective standard.

long as it is limited to a peaceable discussion of such purpose. These sections do not punish the exhortation, encouragement, or commission of preparatory acts leading toward a violation of law, (see Fox v. State of Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 (1915), cited approvingly in Cox v. State of Louisiana, 379 U.S. 559, 85 S.Ct. 453 (1965); *Feiner*, supra) but punish the assembly itself. Evil thoughts alone do not constitute any crime. E. g. Young v. Georgia, 82 Ga. 752, 9 S.E. 1108; 22 C.J.S. Criminal Law § 29. Nor would peaceable assembly with evil thoughts do so either. Thus, a quiet meeting in a back room of two or more persons even if it were to conjure up some future violation of law, is permissible. It is only when such assembly results in the commission of overt acts that it becomes unlawful. This is not to say that participants could not be punished as aiders and abettors in the substantive offense under recognized standards. Further, since the State of Georgia has at long last recognized that conspiracy itself may now exist as a substantive offense, conceivably an ordinance could be drawn punishing such an offense on the local level providing it coupled the assembly with the recognized standard of a subsequent overt act. However, in their present form, they punish assembly in a certain state of mind—opposition to the draft laws, the prohibition laws, the income tax, or any of the ordinances of Atlanta.

Only recently the Supreme Court has reiterated the power of a municipality to control the flow of traffic on its streets and sidewalks and to permit ingress and egress to public and private property, (See e. g., Cameron v. Johnson, supra; Adderley v. State of Florida, supra; Cox v. State of Louisiana, supra) if such restrictions are designed to operate in a nondiscriminatory manner.

▇▇▇ Section (r) is a reasonable exercise of this power. Under the section, no right is granted to an individual policeman to order anyone off of the streets without cause, it is only refusal of such an order coupled with a blockage of traffic that is punishable. As such, it meets the requisite tests and withstands any attack made here.

▇▇▇ Lastly Section (*l*) is an oblique attempt to deal with the problem of public obscenity. There are indications that the use of obscenity in the presence of females, minors, or in public places is properly prohibitable, the inference being that "obscene" has an ascertainable meaning. See Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). And, a proper ordinance to such effect might be drawn. Cf. Chaplinsky, supra; University Committee to End the War In Viet Nam v. Gunn, 289 F.Supp. 469 (W.D.Texas, April 9, 1968.) However, here, the ordinance adheres to some archaic and unknown standard of "bawdy" or "lewd." Nor would words spoken in anger alone be prohibited. No law attempts to control argument or heated debate or even the occasional angry outburst in the courtroom. As vague and indefinite, this section constitutes an overbroad restriction on free speech.

On the sections sustained, there is no showing of any bad faith prosecution of the plaintiffs and, moreover, the facts as developed by these concurrent motions for summary judgment negate any such finding.

In summary, the court has ruled on Section 20–7 of the Atlanta Ordinance as follows:

(a) Valid

(b) Valid

(c) Invalid

(d) Valid

(e) Invalid

(f) Invalid

(g) Invalid

(h) Not attacked

(i) Not attacked

(j) Not attacked

(k) No jurisdiction

(*l*) Invalid

(m) Not attacked

(n) Invalid

(o) Valid

(p) Invalid

(q) Valid

(r) Valid.

Accordingly, an appropriate decree prohibiting future prosecutions under Sections (c), (e), (f), (g) (l), (n), and (p) of said ordinance may be presented.

The prayers for injunctive relief by the defendants are denied.

It is so ordered.

Exhibit A

OFFICE OF CLERK OF BOARD
OF ALDERMEN
CITY HALL
ATLANTA, GEORGIA 30303

AN ORDINANCE

BY POLICE COMMITTEE

AN ORDINANCE PROHIBITING
DISORDERLY CONDUCT

BE IT ORDAINED BY THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF ATLANTA as follows:

SECTION 1. Section 20–7 of the Code of Ordinances of the City of Atlanta is hereby repealed in its entirety and the following is enacted in lieu thereof:

"Section 20–7.

It shall be unlawful for any person within the corporate limits of the City of Atlanta to violate any of the following sections of this ordinance:

(a) Any person who shall act in a violent or tumultuous manner toward another whereby any person is placed in fear of safety of his life, limb or health; or

(b) Any person who shall act in a violent or tumultuous manner toward another whereby the property of any person is placed in danger of being destroyed or damaged; or

(c) Any person who shall endanger the lawful pursuits of another by acts of violence, angry threats and abusive conduct; or

(d) Any person who shall cause, provoke or engage in any fight, brawl or riotous conduct so as to endanger the life, limb, health or property of another; or

(e) Any person who shall assemble or congregate with another or others for the purpose of causing, provoking or engaging in any fight or brawl; or

(f) Any person who shall be found jostling or roughly crowding or pushing any person in any public place; or

(g) Any person who shall collect in bodies or in crowds for unlawful purposes as defined by the current ordinances of the City of Atlanta; or

(h) Any person who shall assemble or congregate with another or others for the purpose or with the intent to engage in gaming; or

(i) Any person who shall frequent any public place with intent to obtain money from other persons by illegal and fraudulent schemes, tricks, artifices or devices; or

(j) Any person who assembles for the purpose of engaging in any fraudulent scheme, device or trick, to obtain any valuable thing in any place or from any person in said City, or who shall aid or abet therein; or

(k) Any person who shall accost or attempt to force his company upon any female or attempts to pick up any female; or

(l) Any person who utters while in a state of anger in the presence of another any bawdy, lewd or obscene words or epithets; or

(m) Any person who frequents any place where gaming or illegal sale or possession of alcoholic beverages or narcotics or dangerous drugs is practiced, allowed or tolerated; or

(n) Any person who shall act in a dangerous manner toward others; or

(o) Any person who shall use "fighting words" directed towards any person who becomes outraged and thus creates a turmoil; or

(p) Any person who shall assemble or congregate for the purpose of trouncing upon another; or

(q) Any person who shall by acts of violence interferes (sic) with another's pursuit of a lawful occupation; or

(r) Any person who shall congregate with another or others in or on any public way so as to halt the flow of vehicular or pedestrian traffic and refuses to clear such public way when ordered by the City Police or other lawful authority."

SECTION 2. Any person who shall violate any subsection of this ordinance may be charged with the offense of "disorderly conduct", and on conviction thereof, may be found guilty of disorderly conduct.

SECTION 3. Be It Further Ordained that any person who shall be found guilty of any of the specific offenses against the City of Atlanta, and on conviction thereof, shall be punished as provided in Section 1–9, Volume II of the Charter and Related Laws and Code of Ordinances of the City of Altanta of 1965.

SECTION 4. The provisions of this ordinance are declared to be severable and if any section, sentence, clause or phrase of this ordinance shall for any reason be held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses and phrases of this ordinance, but they shall remain in effect, it being the legislative intent that this ordinance shall stand notwithstanding the invalidity of any part.

SECTION 5. All ordinances and parts of ordinances in conflict herewith are hereby repealed.

ADOPTED By Board of Aldermen

February 6, 1967

APPROVED February 9, 1967

A true copy,

J. J. Pinter

Clerk of Board of Aldermen