Rev. Robert HUNTER, Rev. Elroy Embry, James Gibson, Southern Christian Leadership Conference, Inc., Henry Bass, the Atlanta Workshop in Nonviolence, and all others similarly situated, Plaintiffs-Appellants,

v.

Ivan ALLEN, Jr., Mayor of the City of Atlanta, Georgia; Herbert T. Jenkins, Police Chief of the City of Atlanta, Georgia; and J. R. Shattles, Police Officer of the City of Atlanta, Georgia, Defendants-Appellees.

No. 26570.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1970.

Rehearing Denied and Rehearing En Banc Denied April 14, 1970.

Howard oore, Jr., Peter E. Rindskopf, Atlanta, Ga., for appellants.

Henry L. Bowden, Martin McFarland, Atlanta, Ga., for appellees.

Before COLEMAN and GODBOLD, Circuit Judges, and SCOTT, District Judge.

GODBOLD, Circuit Judge:**

This appeal is another round in a series of challenges in federal court on First Amendment grounds to the facial validity of the Atlanta disorderly conduct ordinance. In the first case the ordinance as then written was held unconstitutionally overbroad. Carmichael v. Allen, 267 F.Supp. 985, 997–999 (N.D.Ga.1967) (three-judge court). The ordinance was revised and, as rewritten, is divided into eighteen subsections. 2 Charter, Code of Ordinances & Related Laws of Atlanta, § 20–7, at 1022–1022.1 (1967). The present suit attacks fourteen of the subsections. On cross motions for summary judgment, the district court held that seven of the subsections were unconstitutionally vague or overbroad, that one of the subsections was not properly subject

to attack, and that six of the subsections were valid. Hunter v. Allen, 286 F.Supp. 830 (N.D.Ga.1968). This appeal concerns the following five subsections upheld as valid by the court below:[1]

Section 20–7.

It shall be unlawful for any person within the corporate limits of the City of Atlanta to violate any of the following sections of this ordinance:

(a) Any person who shall act in a violent or tumultuous manner toward another whereby any person is placed in fear of safety of his life, limb or health; or

(b) Any person who shall act in a violent or tumultuous manner toward another whereby the property of any person is placed in danger of being destroyed or damaged; or

\* \* \* \* \* \*

(o) Any person who shall use "fighting words" directed towards any person who becomes outraged and thus creates a turmoil; or

(q) Any person who shall by acts of violence interferes [sic] with another's pursuit of a lawful occupation; or

(r) Any person who shall congregate with another or others in or on any public way so as to halt the flow of vehicular or pedestrian traffic and refuses [sic] to clear such public way when ordered by the City Police or other lawful authority.

In the beginning it is appropriate that we reiterate the words of the three-judge district court that considered the Atlanta ordinance in 1967, Carmichael v. Allen, supra, 267 F.Supp. at 992:

Before discussing the issues presented in this case, we think it important to state what is not involved. The case does not involve, or in any way question, the fundamental right of the state of Georgia or the city of

---

** In part this is the opinion of the Court and in part a dissent, as explained below.

1. The plaintiffs' appeal is limited to five of the subsections upheld as valid by the district court. The city has not appealed from the court's determination that seven of the subsections were invalid.

Atlanta to prosecute, within their respective spheres, any unlawful act of violence committed either individually or as a member of a mob against a police officer, a city official, or any private citizen.

The facts of the present case are set out in the district court's opinion, 286 F.Supp. at 833–835. Briefly stated, the suit arises out of two separate incidents in which persons physically interposed themselves to prevent the ingress and egress of others. The first incident involved members of the Atlanta Workshop in Non-Violence who blocked the doors of a privately-owned building containing several of Atlanta's Selective Service Boards in protest against the Viet Nam war. The second involved members of the Southern Christian Leadership Conference who protested building construction at an all-Negro high school by barring entry to the site, through the means of sitting in a parked car which blocked an entrance and standing in front of a car which sought to enter. Persons from both groups of protesters were arrested and convicted in Atlanta muncipal court of violating Section 20–7 (q).[2] Their cases are now alleged to be pending on petitions for certiorari filed in the Superior Court of Fulton County, Georgia.

Following the convictions, the instant action was filed in the federal district court seeking declaratory and injunctive relief. The gravamen of the complaint was that the disorderly conduct ordinance is vague and overbroad so as to violate the First Amendment guarantees of freedom of speech and assembly. This appeal is from a final judgment entered following the motions for summary judgment.[3]

### 1. General Considerations

The law of vagueness and overbreadth is an amalgam of substantive and procedural considerations, including such matters as federal-state relations, individual standing to raise constitutional questions, and the mechanics of judicial review. *See generally,* Note (Amsterdam), The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960). In order to clarify the issues before us, we set forth at the outset the subject matter to be considered, the scope of our inquiry, and some relevant substantive principles.

*Substantive considerations.* As the Supreme Court stated in Zwickler v. Koota, 389 U.S. 241, 249–250, 88 S.Ct. 391, 396–397, 19 L.Ed.2d 444, 451 (1967),[4] cases involving statutory ambiguity may be divided into at least two categories. The first concerns statutes where the vice is overbreadth, *i. e.,* the conduct proscribed by the statute includes areas of protected freedoms.[5] The

2. The SCLC protesters were also charged with violating Section 20–7(r). Because of procedural irregularities in the state court prosecution, the city disavows the convictions under this subsection.

3. The complaint alleged that the city purposefully made the arrests under the disorderly conduct ordinance without any basis in fact so as to harass the plaintiffs in the exercise of their First Amendment rights. These allegations were denied by the defendants. The order entering final judgment recites that "the parties [have] agreed that [the summary judgment] ruling should be a final one in all respects." We take the stipulation of the parties to have removed from the case the contention that the arrests were made in bad faith and to have restricted the issue to the validity of the ordinance on its face.

4. *See also* Cameron v. Johnson, 390 U.S. 611, 615–617, 88 S.Ct. 1335, 1337–1339, 20 L.Ed.2d 182, 187–188 (1968).

5. Professor Amsterdam described this class of cases as being one "in which a legislature, constitutionally free to regulate sphere $A$, but forbidden to encroach upon sphere $B$, has included indiscriminately within the broad wording of a criminal statute both $A$ cases and $B$ cases, thereby leaving the individual to guess at his peril whether he can or cannot be constitutionally punished for violation of the statute." Amsterdam, *supra* at 76.

second category concerns vagueness, where the statute is so ambiguous as to fail to give fair warning of the conduct proscribed.[6]

 Since all words are malleable to some extent,[7] the ambiguity necessary to invalidate a statute necessarily is a matter of degree. A comparison of the degree of ambiguity tolerated in the two classes of cases indicates that statutes whose overbreadth impinges upon the exercise of First Amendment rights are subject to more exacting standards of precision than those whose ambiguity is attacked for vagueness. *Compare* Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) *with* Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Therefore, we approach the issue of the validity of the Atlanta ordinance recognizing that "stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, 210 (1959).

 *Scope of inquiry.* The distinction between overbreadth and vagueness has procedural as well as substantive implications. The extraordinary federal injunctive power exercised in suits seeking to restrain state prosecutions may be justified where necessary to protect against the "chilling effects" of certain statutes or prosecutions on the exercise of First Amendment rights. *See generally* Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969); Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969).[8] Thus the scope of our inquiry into the validity of the ordinance in this case goes no further than the inquiry into chilling effects on First Amendment rights that is the justification for our equitable jurisdiction.[9] Where chilling effects may be present, as when the ordinance through overbreadth impinges on protected conduct, or when, while properly regulating First Amendment conduct, it does so in vague, unnecessarily sweeping terms, or when it is used as a vehicle for harassing First Amendment activity,[10] injunctive relief may be had. However, in situations where ambiguity does not affect First Amendment rights, as when vagueness allegedly fails to give the fair warning of prohibited conduct required by due process, injunctive relief would not be proper, and federal judicial review must be secured through other channels.

██ *Subject matter.* Although the plaintiffs were prosecuted under but two of the subsections of the Atlanta ordinance, they attacked as invalid fourteen of the subsections. The district court

---

6. Professor Amsterdam describes these cases as ones "in which a legislature which might constitutionally have proscribed either or both of two classes of behavior, *A* or *B*, has chosen to proscribe only *A*, but in language so uncertain that whether most fact situations are *A* or *B* is a matter for guesswork." *Id.*

7. *See* Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 528 (1947).

8. Though in this instance trials had commenced they were under but two of the numerous subsections before the district court, and we conclude this does not preclude the district court from exercising its equitable jurisdiction. *Cf.* Sheridan v. Garrison, *supra*.

9. *See* Carmichael v. Allen, 267 F.Supp. 985, 996 (N.D.Ga.1967): "It is only in * * * situations where the overbreadth of the statute interferes with a First Amendment right, such as the freedom of expression, or where the normal state trial does not assure adequate vindication of constitutional rights, that an equity court can properly be called upon to enjoin prosecutions on the ground of vagueness of a statute."

10. Since the issue of bad faith prosecution is not before us, *see* note 3, *supra*, our inquiry is restricted to whether the subsections of the ordinance are void on their face.

ruled that the entire ordinance was subject to attack. 286 F.Supp. at 835. We agree with that determination. Historically Atlanta proscribed disorderly conduct in a single, undivided ordinance, and the record indicates that under the present ordinance the particular subsections under which a case is prosecuted may be determined after arrest. The plaintiffs maintain they are threatened with prosecution under all the challenged subsections. Under these circumstances, the plaintiffs have standing to challenge the entire ordinance. *Cf.* Dombrowski v. Pfister, 380 U.S. 479, 489, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22, 30 (1965).[11]

### 2. The Atlanta Ordinance

In light of these substantive and procedural considerations, we turn to the five subsections of the Atlanta ordinance at issue in this appeal. On the merits, all members of the Court conclude that subsections (o), (q), and (r) are valid on their face. As to these subsections we unanimously affirm the district court's judgment. Judges Coleman and Scott also view subsections (a) and (b) as valid on their face, and the judgment of the district court is, therefore, affirmed as to these subsections. Their views as to these subsections are set out in their separate majority opinion. Consequently that portion of the instant opinion which relates to subsections (a) and (b) is a dissent.

*Subsections (a) and (b)*

Speaking for myself only, it is my view that subsections (a) and (b) are facially invalid. Therefore, I dissent from the view of Judges Coleman and Scott on that issue.

The district court stated that subsection (a) was "substantially weakened" because the provision "whereby any person is placed in fear * * * " made criminality turn on the subjective reactions of third persons. While the court acknowledged that this infirmity made the subsection subject to the defects of lack of fair warning and a "heckler's veto" present in such cases as Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) and Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), it concluded that these cases were not applicable because the Atlanta ordinance applied only where a person acted in a violent or tumultuous manner. Thus, according to the court below, the reach of the ordinance was restricted so that it could not constrain freedom of speech or peaceable assembly. 286 F.Supp. at 836 n. 3; *cf.* Carmichael v. Allen, *supra,* 267 F.Supp. at 966.[12]

I cannot agree that the phrase "act in a * * * tumultuous manner toward another" so clearly applies to unprotected activity as to free subsections (a) and (b) from the strict requirements of precision and narrow scope that apply in First Amendment cases. *See* Edwards

---

11. Our holding that the plaintiffs have standing to attack the ordinance does not imply that their conduct is protected by the First Amendment. As was said in *Dombrowski, supra,* 380 U.S. at 486, 85 S.Ct. at 1116, 1121, 14 L.Ed.2d at 28, "we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *See also* N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405, 417 (1963); Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84

L.Ed. 1093, 1099–1100 (1940); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; *but see* Wright v. City of Montgomery, 282 F.Supp. 291 (M.D. Ala.1968), aff'd on other grounds 406 F.2d 867 (5th Cir. 1969).

12. In my view, "whereby the property of any person is placed in danger of being destroyed or damaged" in the context of subsection (b) is subject to some of the same defects as the "placed in fear" clause in subsection (a). The language does not clearly delineate that the danger to property be attributable to the actor.

v. South Carolina, 372 U.S. 229, 236, 83 S.Ct. 680, 683, 9 L.Ed.2d 697, 702 (1963).[13]

The limits of the phrase "tumultuous conduct toward another" are shrouded in obscurity. My brother judges recognize, as I do,[14] that words are relative. But this is not the answer to the inquiry. Rather it is the root of the problem, which is whether the City of Atlanta, constitutionally free to regulate some kinds of activities, but forbidden to regulate those protected by the First Amendment, has by the employment of a relative and imprecise term in its ordinance created a situation in which the individual must guess at his peril whether he can or cannot lawfully carry out activities that he has in mind.

In the first place, the phrase "act in a tumultuous manner" includes the act of speaking. The ordinance strikes directly at "pure speech." Webster's Third New International Dictionary, referred to by my brothers, gives other definitions for "tumult" than the one to which they limit their discussion.

[A] confusion of loud noise and usu. turbulent or agitated movement * * [the bells * * * made a jangling tumult-H. G. Wells] [the sound of the lava, a tumult of rock in molten pressure under moving earth-Richard Llewellyn] * * * a violent outburst of unrestrained emotions: PAROX-YSM [a tumult of weeping W. G. Hardy] [a tumult of rejoicing in camp-H. E. Scudder].[14A]

In the second place, acting in a turbulent manner, as the above definitions point out, may include a constitutionally peaceable assembly. It may be rejoicing or agitated or confused but peaceable. This ordinance reaches every football crowd entering, and at least one set of supporters leaving, every game at Grant Field in Atlanta. Not all tumultuous conduct is funseeking conduct. It potentially includes, for example, the peaceful picketing found protected in Cox v. Louisiana, *supra*.

Because those subsections have a potentially inhibiting effect on both speech and assembly, this Court is required to apply a strict standard of permissible ambiguity and vagueness, Smith v. California, *supra*. The ordinance must define the area of illegal conduct with sufficient specificity that men of ordinary intelligence need not guess at its meaning. Hiett v. United States, 415 F.2d 664 (5th Cir. 1969). It does not meet that standard to pick and choose one possible meaning of an imprecise word. The inability of the citizen to guess which of several meanings will be chosen by the courts, and law enforcement officers, creates the "chilling effect" by which the citizen is constrained to refrain from doing what he constitutionally may do.

In Edwards v. South Carolina, *supra*, the activity consisted of assembling on

---

13. In analyzing these subsections for overbreadth, the Court must take into account "possible applications of the statute in other factual contexts besides the case at bar." N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337–338, 9 L.Ed. 2d 405, 418 (1963).

14. Footnote 7, *supra*, and accompanying text.

14A. See also The Random House Dictionary of the English Language (1966), which includes among the definitions of "tumult" the following: "Highly distressing agitation of mind or feeling; turbulent mental or emotional disturbance," and among its synonyms, "Excitement, perturbation." Also it includes in its definitions of "tumultuous" the following: "Raising a great clatter and commotion, disorderly or noisy," and among its synonyms, "uproarious, turbulent, violent"; "boisterous"; "unquiet."

The crime of tumultuous petitioning was made a misdemeanor by Stat. 13 Car. II, St. 1, c. 5. It consisted of more than twenty persons signing a "petition to the crown or either house of Parliament for the alteration of matters established by law in church or state, unless the contents thereof had been approved by three justices" or the grand jury. Black's Law Dictionary 1685 (1957 ed.).

the State House grounds, carrying signs, listening to a religious harangue by a speaker, loudly singing patriotic and religious songs, and clapping hands and feet. Officials characterized the conduct as "boisterous," "loud," and "flamboyant." The conduct was held protected (although within the definition by the state courts of common law breach of the peace). It seems to me beyond argument that what was done at the South Carolina State House reasonably could be characterized as "tumultuous" if done at the Georgia State Capitol in Atlanta. The issue is not whether one agrees or disagrees with that characterization but, in the phrasing of *Hiett*, whether men of ordinary intelligence must guess at whether their actions will or will not be so characterized.

My brothers seek to avoid *Edwards* on the ground that the conduct there held protected included no violence or threat of violence, while the Atlanta ordinance proscribes "violent or tumultuous" action. The overbreadth of "tumultuous" is sought to be limited by association with the better-defined "violent." I am unable to ascertain whether the association is made by coupling the terms by converting the disjunctive "or" into a conjunctive "and," [15] or whether by an unexpressed application of *ejusdem generis* my brothers conclude that to act in a tumultuous manner is either the same as or no broader than to act in a violent manner. Whatever the theory, this sort of narrowing (and here an unarticulated narrowing) of a statute by the federal court is inappropriate. We are referred to no prior state court interpretation. Where the statute is of an uncertain nature and obviously susceptible of a limiting construction the federal court in some cases may, and in others may not, elect to abstain and await state court construction. See the many cases at footnote 14 of Zwickler v. Koota, *supra*. Since this is a First Amendment case we may not abstain from considering facial validity and await state action. Zwickler v. Koota, *supra*; Keyishian v. Board of Regents, *supra*. We are required to consider the face of the statute as it reads. The federal court may not apply its own narrowing construction and then find the statute as construed not overbroad. It seems to me that is what my brothers have done. There are good reasons forbidding this. Even though the federal court cannot abstain it must, in what it decides and how it decides, continue to respect the policies which underlie comity and federalism. We must give appropriate regard to the state's right to conduct its own affairs, including construing its own statutes, so long as done within constitutional limits. If a court is going to narrow this ordinance to save it by either coupling "tumultuous" with "violent", so as to exclude prosecutions for acts which are tumultuous but nonviolent, or by holding "tumultuous" to be no broader in reach than "violent," the Georgia courts are entitled to first crack at it.

Also, there is no assurance that either Georgia courts or Georgia law enforcement officers will adopt the narrowing construction preferred by this Court. They are not bound to do so. As the Supreme Court indicated in Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953), the special problem in "public forum" cases is not constraining the interpretation of state statutes by state courts, but limiting the discretion of state officials in permitting

---

15. Compare the District of Columbia statute punishing engaging in "a public disturbance involving an assemblage of five or more persons which by tumultuous *and* violent conduct or the threat thereof creates grave danger of damage or injury to property." 22 D.C.Code Sec. 1122(a) [emphasis supplied]. The Court of Appeals for the District of Columbia, in holding that the statute withstood constitutional attack on vagueness grounds, noted that "that group must be causing or threatening tumult *and* violence. * * *" Matthews v. United States, 419 F.2d 1177. [Emphasis supplied.]

or not permitting exercise of First Amendment rights. The basic problem in overbreadth and vagueness cases is to give clear guidance to local officials as to when they may, and may not, intercede in the interest of public safety. The federal court confuses rather than assists if it gives what purports to be guidance but which in fact does not bind the local courts.

### Subsection (o)

The plaintiffs acknowledge that they face a "heavy burden" in attacking subsection (o) because of the Supreme Court's holding in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) that "fighting words" (words which, by their utterance, are reasonably and objectively likely to cause the average addressee to fight) are beyond the pale of the First Amendment. Nevertheless they contend that the statute is unconstitutionally vague because it does not outlaw all fighting words but only those fighting words that cause another person to create a "turmoil." Thus, they argue, criminality depends on a standard which is both subjective and ambiguous.

 The plaintiffs' contentions do not raise the First Amendment issues that are the proper subjects of inquiry in this suit. Any ambiguity that may inhere in the subsection cannot result in a chilling effect on First Amendment rights, since the only conduct that could possibly be chilled under subsection (o) is the utterance of fighting words. This, according to *Chaplinsky*, is outside the First Amendment.

### Subsection (q)

The plaintiffs launch a two-pronged attack on subsection (q). They argue that "acts of violence" is impermissibly overbroad so as to apply to protected activity and that "interferes" is unreasonably ambiguous and vague.

 We cannot accept the contention that "acts of violence" is so vague as to chill the exercise of First Amendment rights.[16] In common parlance the phrase connotes assault upon persons and property that are the very essence of unprotected conduct. The plaintiffs point to no Georgia appellate court constructions of this phrase that indicate that the Georgia appellate courts might be expected to construe "acts of violence" so as arguably to encompass protected activity. *See, e. g.,* Shuttlesworth v. City of Birmingham, 382 U.S. 87, 91, 86 S.Ct. 211, 213, 15 L.Ed.2d 176, 180 (1965). The argument that "acts of violence" renders subsection (q) overbroad on its face is without merit.

 The challenge to the ambiguity of the word "interferes" fails for the same reason as the attack on subsection (o). Since we have concluded that "acts of violence" in subsection (q) does not arguably relate to protected activity, any ambiguity in the word "interferes" in that subsection cannot produce a chilling effect on the exercise of First Amendment rights. If the plaintiffs wish to raise constitutional claims concerning the due process issue of vagueness (lack of fair warning) they are free to do so in the state courts and through proper channels of federal judicial review. *See* discussion, *supra,* under "Scope of inquiry."

### Subsection (r)

 Although the right of peaceable demonstration is protected by the First Amendment, *e. g.* Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969),[17] this form of expression is subject to greater regulation of time, place, and manner than is "pure speech." *See* Cameron v. Johnson, 390 U.S. 611, 617, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182, 188 (1968); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476,

16. *See* N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405, 417–418 (1963); *cf.* Keyishian v. Board of Regents, 385 U.S. 589, 599, 87 S.Ct. 675, 681, 17 L.Ed.2d 629, 638 (1967).

17. *See generally* Kalven, The Concept of the Public Forum: Cox v. Louisiana, 1965 Sup.Ct.Rev. 1 (1965).

13 L.Ed.2d 487 (1965); Davis v. Francois, 395 F.2d 730 (5th Cir. 1968). Subsection (r) is such a permissible regulation. The objective of preventing the halting of traffic on public highways is a legitimate state interest, and this objective is attained in a narrow and clearly delineated manner which "carves out of the demonstration the evil [the state] seeks to prohibit." Davis v. Francois, *supra* at 736.[18] The Atlanta ordinance as written is substantially identical to the ordinances as construed that were upheld by the Supreme Court in Shuttlesworth v. City of Birmingham, *supra,* and by this Court in Wright v. City of Montgomery, 406 F.2d 867 (5th Cir. 1969).[19]

## MAJORITY OPINION AS TO SUBSECTIONS (a) AND (b).

COLEMAN, Circuit Judge, and SCOTT, District Judge.

As previously noted, we disagree with the conclusion of our brother Godbold that subsections (a) and (b) are invalid and we, therefore, affirm.

These two subsections are challenged on two grounds. The first ground is that the word "tumultuous" gives the ordinance such broad application as to allow its use to restrict the exercise of protected First Amendment rights or, alternatively, that the disputed word in the ordinance renders it so vague that it fails properly to apprise persons of that conduct which is declared illegal.

We realize that the concepts of vagueness and overbroadness have been given greater patronage in cases involving possible encroachment on First Amendment rights. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Even with this consideration in mind, we do not feel compelled to invalidate subsections (a) and (b).

These subsections are directed at action, not speech. The subsections read "Any person who shall *act* in a violent or tumultuous manner. * * *" We are thus of the opinion that the ordinance, as presently worded, is restricted in application to action and that no reasonable reading of the ordinance would allow proscription of protected speech.

The *Edwards* case, relied upon by the dissent, involved prosecution for the *unwritten, common law offense* of breach of the peace. Moreover, a close reading of that case indicates that the "boisterous" conduct described and prosecuted there was nothing more than loud speech, accompanied by hand-clapping and feet-stomping, on the South Carolina State House grounds. There was no violence or threat of violence on the part of any member of the crowd in the *Edwards* case. Those circumstances are substantially different from the facts at hand, i. e., where a written ordinance proscribes violent or tumultuous action. The foregoing discussion leads us to the conclusion that the ordinance is not overbroad.

We likewise believe that the statute withstands an attack on the grounds of vagueness. Few words in the

18. In areas where narrow regulation of First Amendment activity is permissible, problems of vagueness as well as overbreadth may be present. See discussion, *supra,* under "Scope of inquiry" and *see* Hiett v. United States, 5th Cir., 415 F.2d 664, at 670–671 [August 26, 1969]. We conclude that the narrow language of subsection (r) contains the specificity required of statutes regulating protected conduct so as not to be void for vagueness.

19. The ordinance's requirement of a policeman's order to disperse does not grant to the policeman the unrestricted power of censorship over the use of the streets held impermissible in such cases as Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). *See also* Cox v. Louisiana, 379 U.S. 559, 579, 85 S.Ct. 466, 469, 13 L.Ed.2d 487, 501 (1965) (Black, J.) (concurring opinion). As pointed out in *Shuttlesworth,* a possibility of discriminatory application does not equal overbreadth. 382 U.S. at 91, 86 S.Ct. at 213, 15 L.Ed.2d at 180.

English language are subject to only one clear interpretation. Moreover, words, like all other things in the universe, are relative. Therefore, in drafting a statute such as that now in issue, a difficult problem arises of choosing words whose *relative* meanings are sufficiently unambiguous to avoid vagueness and overbroadness considerations, and which yet, at the same time, give public officials the latitude to prosecute breaches of the peace which are the proper subject of the state police power. Viewed in the light of relativeness, we hold that the word "tumultuous", used in this ordinance, passes constitutional muster. Some of the definitions of "tumult" and its derivatives, taken from Webster's Third New International Dictionary, are as follows: "Disorderly and violent movement, noisy and turbulent uprising, disturbance, riot". We think that the type of *action* which is proscribed by this statute is adequately defined and gives fair warning to the general public.

 Appellants' second contention is that the subsections are fatally defective in that they make the subjective reactions of third persons a necessary element of the crime. The trial court rejected this contention, distinguishing Terminiello v. City of Chicago. We agree. Making criminality turn on the reasonable subjective reactions of third persons to action is not an innovation in the law. *See,* for instance the federal robbery statute (18 U.S.C. § 2113) which uses the words "by intimidation"—intimidation is nothing more than a subjective state of fear. *See,* also, O'Leary v. Kentucky, Ky., 441 S.W.2d 150, cert. denied 396 U.S. 40, 90 S.Ct. 267, 24 L.Ed.2d 208 (November 17, 1969).

Affirmed.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

GODBOLD, Circuit Judge (dissenting):

For the reasons stated in my original dissent, I would grant the petition for rehearing.