Alex COOLEY et al., Plaintiffs,

v.

William Baer ENDICTOR, Assistant Solicitor of the Criminal Court of Fulton County, et al., Defendants.

Civ. A. No. 15359.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 26, 1971.

Morris Brown, Atlanta, Ga., for plaintiffs.

Thomas E. Moran, Sandy Springs, Ga., W. Baer Endictor, Hinson McAuliffe, Atlanta, Ga., for defendants.

SIDNEY O. SMITH, Chief Judge.

This is a class action in which plaintiffs seek declaratory and injunctive relief against enforcement of Georgia's indecent exposure statute. Ga.Code Ann. § 26–2105; Ga.L.1971, p. 344.[1] The action is said to arise under the First, Fifth, Sixth, Ninth and Fourteenth Amendments to the Constitution and Title 42 U.S.C.A. §§ 1981, 1983 and 1988.

1. This Act provides: "26–2105. (a) Every person who, during the course of a play, night club act, motion picture, television production or other exhibition, or mechanical reproduction of human conduct, engages in conduct which would be public indecency under section 26–2011 if performed in a public place, shall be guilty of participation in indecent exposure and upon conviction shall be punished as for a misdemeanor.

"(b) Every person who procures, counsels or assists any person to engage in such conduct or who knowingly exhibits or procures, counsels or assists in the exhibition of a motion picture, television production or other mechanical reproduction containing such conduct shall be guilty of a misdemeanor."

The parent statute, not attacked here, provides: "26–2011. Public indecency. —A person commits public indecency when he performs any of the following acts in a public place and upon conviction shall be punished as for a misdemeanor: (a) An act of sexual intercourse; (b) A lewd exposure of the sexual organs; (c) A lewd appearance in a state of partial or complete nudity; (d) A lewd caress or indecent fondling of the body of another person. (Acts 1968, pp. 1249–1301)"

The Court's jurisdiction is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

 A prayer for injunctive relief against enforcement of a state statute, on the ground that the statute is repugnant to the federal Constitution, must be heard by a three-judge court, 28 U.S.C.A. § 2281, and plaintiffs have requested that such a court be convened. Significantly, however, the statute challenged here is a state criminal statute. Because of this fact, the Court has from the first entertained serious doubts concerning the propriety of federal intervention. These doubts stemmed in general from a stated policy of the federal courts against interference in state criminal matters and in particular from a series of recent decisions in the Supreme Court. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).[2] Consideration of judicial economy required that this threshold question be determined before a three-judge court was empanelled, and the Court accordingly scheduled a hearing for this purpose on August 5, 1971. On the basis of this hearing, the Court makes the following:

## FINDINGS OF FACT

Plaintiff Cooley is the producer of the musical play entitled "Stomp" and plaintiffs Herring and Mackey are artists who perform in that play. Plaintiff Johnson is a member of the theater-going public interested in viewing works of art in their unbowdlerized form. Defendants are the chief law enforcement and prosecuting officials of Fulton County and the City of Atlanta, and are sued in their official capacities.

During June, 1971, "Stomp" was being offered to the viewing public in Atlanta. Defendants Endictor and McEntire attended a performance and concluded that the nudity exhibited in two scenes, the so-called "birth" and "river" scenes, exceeded the bounds prescribed by Georgia's recently enacted indecent exposure statute. On June 16, 1971, they made their views known to plaintiff Cooley and informed him that, if those scenes were not removed or altered, prosecutions would be initiated against all persons connected with the play. Cooley relayed this information to the members of the cast, who decided to bowdlerize the two scenes rather than risk prosecution.

At the request of plaintiffs' counsel a second meeting was had with Endictor and McEntire on June 30, 1971. Plaintiffs suggested that defendants make a test case against an individual member of the "Stomp" company, but in the meantime allow plaintiffs to perform the play in its original form. Defendants responded that they could not agree to any arrangement which would sanction violation of a statute they were sworn to enforce. Plaintiffs also offered to warn their patrons of the nudity they could expect to see and to exclude all minors from the audience. Defendants did not regard this as an acceptable alternative, however, since in their view the law did not countenance the exhibition of obscenity under any circumstances. This meeting, then, proved unavailing and the situation remained essentially unchanged. Having been unable to work out a mutually acceptable solution in conference, plaintiffs filed the present action. Between the date of the filing and the date of the hearing, however, the building in which "Stomp" was being performed was destroyed by fire. Apparently no new facility in which the play's original engagement could be completed was ever located. However, it appears that plaintiffs have agreed to perform the play for the students at the Georgia Institute of Technology in the near future and that they intend to re-

---

2. Hereafter referred to collectively as "Younger v. Harris, etc."

open to the public generally as soon as space can be found. Although plaintiffs have indicated that they will continue to delete the allegedly offensive matter from their performances, they remain adamant in their desire to put the play on in its unexpurgated form and in their belief that they have a constitutional right to do so.

## CONCLUSIONS OF LAW

### A. Mootness

■ Defendants argue that since plaintiffs are not now performing the objectionable scenes, and since defendants do not intend to bring prosecutions on the basis of performances given prior to June 16, 1971, the entire controversy has now become moot. The Court cannot agree. As indicated above, plaintiffs have made no concessions concerning their wish to perform the play in its original form, nor concerning their right to do so. Defendants acknowledge that if the objectionable scenes are restored, plaintiffs will be prosecuted. Under these circumstances, the Court is satisfied that a live controversy persists and that plaintiffs need not, as defendants phrase it, actually "throw the tea into the harbor" by violating the law, to satisfy the threshold requirement of any action.

### B. Injunctive Relief

■ In Younger v. Harris, etc., the Supreme Court held that, where a state prosecution was already pending at the time the federal action is filed, a federal court could properly enjoin the state proceedings only under "exceptional circumstances". In general, the plaintiff must make a showing of irreparable injury, the traditional prerequisite for injunctive relief. He must show in addition, however, that the danger of irreparable injury is both "great and immediate", which normally requires that he show bad faith and an intention to harass on the part of the prosecuting officials. In so holding, the Court emphatically reaffirmed the long-standing federal policy against interference with the normal administration of a state's criminal laws. As the Court pointed out in Younger v. Harris itself, this policy is firmly embedded in our history and has its roots in considerations that are both legal and political. In the Court's own language, these considerations are, first:

" * * * the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. . . ." 401 U.S. pp. 43, 44, 91 S.Ct. p. 750.

and second:

" * * * the notion of 'comity', that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . ." 401 U.S. p. 44, 91 S.Ct. p. 750.

■■ Plaintiffs correctly point out, however, that five of the six cases in the Younger v. Harris group, unlike the present case, are cases in which an *actual* prosecution was already in progress when the federal suit was commenced. In addition, in Younger v. Harris the Court was at pains to emphasize that it was expressing no opinion concerning the propriety of federal injunctive relief when this situation was not present. Plaintiffs argue, therefore, that Younger v. Harris, etc., simply does not speak to the circumstances of the present case. The Court will assume for argument's sake that plaintiffs are correct in their position, though there is some reason to think otherwise.[3] It is nevertheless

3. See Boyle v. Landry, discussed below.

clear, under previous decisions of the Supreme Court, that a plaintiff seeking to enjoin a *threatened* prosecution carries no lesser burden of proof than one who seeks to enjoin a prosecution already begun. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Williams v. Miller, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489 (1942); Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This means, of course, that for plaintiffs to merit federal injunctive relief they must demonstrate bad faith on the part of these defendants. As plaintiffs conceded at the hearing, however, there simply is no evidence on which to base such a conclusion. In view of the very recent enactment of the indecent exposure statute, and plaintiffs' probable ignorance of its terms, defendants chose to warn plaintiffs before invoking the criminal process against them. Later, when plaintiffs desired further discussion on the matter, defendants willingly complied. If any judgment concerning defendants' conduct is called for, it is that they exercised the utmost good faith.

In light of this finding, the general policy expressed in Younger v. Harris, etc., and the explicit holdings of prior decisions, the Court is compelled to conclude that federal injunctive relief is not warranted in the present case.

## C. Declaratory Relief

Plaintiffs ask also for a declaratory judgment that the Georgia statute is unconstitutional, both on its face and as applied to them. The nub of the problem, as it was aptly phrased by plaintiffs' counsel, is that the statute "makes criminal any act done in a theatrical performance which would be criminal if done on Peachtree Street at high noon". Georgia's power to control the dissemination of obscenity in general is thus not at issue. Plaintiffs argue simply that the performing arts are entitled to a less restrictive standard than that which is applied to other, more public, activities. Before considering the merits of this argument, however, the Court must determine whether this is an appropriate case for the exercise of federal jurisdiction. For reasons set forth below, the Court concludes that this is not such a case.

The Supreme Court's decision in Samuels v. Mackell is a convenient starting point, although it does not by itself provide the ultimate solution. There the Court held that "where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment - - -" 401 U.S. p. 73, 91 S.Ct. p. 768. As indicated above, this requires a showing of bad faith on the part of prosecution officials, a factor not present here.

Technically, of course, *Samuels* does not apply since there is no prosecution presently pending against these plaintiffs. Indeed the court concluded its opinion with the express caveat that "we * * * express no views on the propriety of declaratory relief when no state proceeding is pending at the time the federal suit is begun." Nevertheless, the considerations which led to the result in *Samuels* point compellingly toward the same result here. First, as the Supreme Court recognized in *Samuels*, the Delaratory Judgment Act provides that the grant of a declaratory judgment may be enforced by "further necessary or proper relief", 28 U.S.C.A. § 2202, and this may properly include the issuance of an injunction. See Also Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Teas v. Twentieth Century-Fox Film Corp., 413 F.2d 1263 (5th Cir. 1969). To allow declaratory relief without requiring a showing of bad faith might well lead to circumvention of that requirement for injunc-

tions as well. Second, even if the declaratory judgment does not lead to the issuance of an injunction, the former is no less disruptive of the state's criminal processes than the latter. As a practical matter, a declaratory judgment that the underlying state statute is unconstitutional precludes initiation of a criminal prosecution almost as effectively as an injunction directed against the prosecuting officials.

It must also be remembered that the Supreme Court's opinion in Boyle v. Landry does not contain the limiting language found in *Samuels*. In *Boyle* plaintiffs sought both injunctive and declaratory relief against enforcement of a number of Illinois statutes. Although prosecutions had been initiated under some of the statutes, none of the plaintiffs had been charged under the two statutes which were found to be unconstitutional by the three-judge district court. The Supreme Court reversed, citing Younger v. Harris and Samuels v. Mackell, and noted that "there is nothing contained in the allegations of the complaint from which one could infer that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute * * * in the normal manner." 401 U.S. p. 81, 91 S.Ct. p. 760. Moreover, Hunter v. Allen, 286 F.Supp. 830 (N.D.Ga.1968), decided by this Court, is also a case in which there were no pending prosecutions at the time federal suit was filed. This Court's grant of declaratory relief was affirmed by the Fifth Circuit, Hunter v.

Allen, 422 F.2d 1158 (5th Cir. 1970), but was reversed outright by the Supreme Court in the wake of Younger v. Harris, etc. See Embry v. Allen, 401 U.S. 989, 91 S.Ct. 1237, 28 L.Ed.2d 528 (1971).[4] These decisions suggest strongly that, in spite of the caveat in *Samuels*, the Supreme Court may well intend to apply the same standard whether there is an outstanding prosecution or not.

Finally, had defendants moved without warning to make arrests and to institute formal prosecutions, plaintiffs would clearly be entitled to neither declaratory nor injunctive relief from this Court. This is the square holding of Younger v. Harris and Samuels v. Mackell. It strikes the Court as anomalous to reach the opposite result with regard to declaratory relief solely because defendants did not choose to "shoot first and ask questions later". A decision on the request for declaratory judgment would simply open the starting gate for a race to the courthouse. So far as the appropriateness of federal intervention is concerned, the Court can perceive no real distinction between the present case and one in which an actual prosecution has already begun. Emphasis on the precise timing involved is largely artificial and, in the Court's view, should not be controlling.

A decision to the contrary would encourage abrupt strong-arm tactics on the part of officials rather than promote the altogether reasonable approach exercised here.

Accordingly, the Court concludes that neither injunctive nor declaratory relief[5]

4. The Supreme Court's orders of March 29, 1971, show that a number of other cases in which no prosecutions were pending were similarly disposed of. See 401 U.S. 984–990, 91 S.Ct. 1237. The remands ordered were apparently for the purpose of ascertainment of the existence of any "exceptional circumstances".

5. This is not to say that the Court cannot conceive of "exceptional circumstances" which might justify injunctive and/or declaratory relief in the *Dombrowski* tradition. Repeated vague and

unspecific threats of arrest, or public warning to patrons, or a pattern of "raids" not followed up by the initiation of prosecution could all demonstrate bad faith harassment. In the area of films and books, repeated or gross seizures of materials without the subsequent prosecutions could likewise do so.

Conversely,' the Court has considered the doctrine of abstention under the enunciated conditions whereby a limiting construction by the state courts could render the statute under attack unobjectionable. Compare Reetz v. Bozanich, 397 U.S.

is appropriate in the circumstances of the present case. Defendants' motion to dismiss is therefore granted.

It is so ordered.

82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) ; Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) with Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) ; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

As seen, the complainants here seek only to void the statute imposing the general indecency statute upon the ARTS (Ga.Code § 26–2105). The Act does so in unequivocal language not subject to any limiting construction except through the parent statute (Ga.Code § 26–2011) itself. As the latter is not questioned here, such solution is not available to resolve the present controversy. It thus appears that resolution will have to come from a direct attack on the statute in question through the state system.