**Marvin LIVINGSTON et al., Plaintiffs-Appellees,**

**v.**

**Bernard GARMIRE, etc., et al., Defendants-Appellants.**

No. 29463.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1971.

Opinion Withdrawn May 10, 1971.

Alan H. Rothstein, City Atty., S. R. Sterbenz, Asst. City Atty., Miami, Fla., for defendants-appellants.

C. Michael Abbott, Donald C. Peters, Miami, Fla., for plaintiffs-appellees.

Before BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

WISDOM, Circuit Judge:

This § 1983 [1] case, one of the many progeny of *Dombrowski* [2] and *Zwickler*,[3] presents the question whether the district court erred in declaring certain portions of the disorderly conduct ordinance of the City of Miami unconstitutional. We affirm the judgment of the district court.

The plaintiffs, three Negro residents of Miami, Florida, facing prosecution before the Municipal Court for disorderly conduct,[4] brought this class action under Rule 23(b) (2), F.R.Civ.P., on their own behalf and "on behalf of all Negro citizens and other minority groups and/or other persons similarly situated, who now or in the future face prosecution by the City of Miami for disorderly conduct" under subsections (a) and (f) of § 38–10 of the Miami City Code. The defendants in this action are Bernard Garmire, the Chief of Police of the City of Miami and William Porter, the City Attorney. Federal jurisdiction is based on 28 U.S.C. § 1343(3).

The plaintiffs alleged that subsections (a) and (f) of § 38–10, the Miami disorderly conduct ordinance, were unconstitutional upon their face as contrary to the guarantees of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Sub-

---

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. *See generally* Maraist, Federal Injunctive Relief Against State Court Proceedings:

The Significance of Dombrowski, 48 Texas L.Rev. 535 (1970).

3. Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444.

4. Marvin Livingston was charged with a "diversion tending to be a breach of the peace" and being "loud and abusive and would not quiet down after 3 warnings"; Stanley Walker with "using obscene and profane language", with "creating a disturbance", and with "making threats of violence against others * * * to-wit: I will kill you"; Edward Powell with "using obscene and profane language".

sections (a) and (f) of the ordinance read as follows:

Any person in the city shall be deemed guilty of disorderly conduct who:

(a). Shall make, aid, countenance or assist in making any improper noise, riot, disturbance, breach of the peace or a diversion tending to a breach of the peace.

\* \* \* \* \* \*

(f). Uses obscene or profane language in the presence of anyone else, or any indecent, insulting or abusive language to another, or makes any threats of violence against another person.

The plaintiffs alleged that those subsections had a "chilling effect upon" and abridged their freedom of speech, denied them their right of privacy, and were palpably vague and overbroad, thus depriving them of due process of law, while giving the defendants absolute and unbridled discretion to arrest at will any person they pleased and whenever it pleased them.

■ Upon the plaintiffs' motion for summary judgment, the district court entered an order declaring subsection (a) unconstitutional in its entirety.[5]   *See*

Livingston v. Garmire, S.D.Fla.1970, 308 F.Supp. 472.   In a separate later opinion[6] the court also declared unconstitutional that part of subsection (f) proscribing the use of "obscene," "profane," "indecent, insulting or abusive" language in the presence of another.   The Court enjoined the defendants from enforcing those portions of the ordinance that the court had declared unconstitutional.

## I.

On appeal the defendants make two basic contentions.   First, they contend that the district court should not have declared subsection (a) unconstitutional in its entirety.   The Miami City Code contains an elaborate provision declaring the sections, paragraphs, sentences, clauses, and phrases of the Code to be severable.   *See* Miami City Code § 1–5.   The defendants argue that the portion of subsection (a) declaring it to be unlawful to make or assist in making a riot is constitutional and should have been severed from the admittedly invalid portions of the subsection.

The district court, however, held that "[t]he entire section, when read in context, must be stricken because that was the treatment afforded it by the Su-

---

5.  The Court then issued a permanent injunction restraining the defendants from enforcing subsection (a) of § 38–10 of the Miami Code, and a similar injunction with respect to subsection (f). Zwickler v. Koota (see footnote 3) held that "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction". 389 U.S. at 254, 88 S.Ct. at 399. *See also* LeFlore v. Robinson, 5 Cir. 1970, 434 F.2d 933. "It will be the task [then] of the District Court \* \* \* to decide whether an injunction will be 'necessary or appropriate' should [the] prayer for declaratory relief prevail". Zwickler v. Koota, 389 U.S. at 255, 88 S.Ct. at 399.

    On appeal the defendants-appellants do not refer to the anti-injunction statute, 28 U.S.C. § 2283. In the district court, but not on appeal, they argued that the case should be dismissed on the theory that the court "should abstain

from taking jurisdiction of this case in favor of the City of Miami Municipal Court which jurisdiction has already been invoked". The court denied the motion to dismiss, holding that the question of abstention was "not yet ripe". In its opinion order on the motion for summary judgment, the court declined to abstain, relying on Dombrowski v. Pfister (see footnote 2), Zwickler v. Koota (see footnote 3) and Landry v. Daley (see footnote 7). We agree with the court. As stated in *LeFlore*, "Zwickler v. Koota, supra, instructs us that the evils of tolerating overbreadth outweigh this discord and justify honoring plaintiffs' choice of a federal forum." 434 F. 2d at 939. In addition, upon analysis of the pertinent Florida decisions the district court concluded that the plaintiffs would have no meaningful remedy in the Florida courts based on their constitutional contentions.

6.  Unpublished.

preme Court of the United States." Livingston v. Garmire, S.D.Fla.1970, 308 F.Supp. 472, 477. By this language the court was referring to the fate of an identical provision in a Chicago disorderly conduct ordinance in Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, and Gregory v. City of Chicago, 1969, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (concurring opinions).

In support of the district court's decision, the plaintiffs argue that all of subsection (a), including the anti-riot clause, is unconstitutional. It is of course true that the City of Miami could enact an ordinance proscribing knowing and willful participation in a riot. But, the plaintiffs argue, the ordinance that would result from our severing the anti-riot clause from the undeniably invalid portions of subsection (a) would itself be unconstitutional. In their view the anti-riot clause of subsection (a), standing alone, is impermissibly vague: nowhere is there a definition of the term "riot." Moreover, its very vagueness increases the possibility that the anti-riot clause may be overly broad, i. e., that it may infringe upon constitutionally protected activities. Seeking judicial support for their argument, the plaintiffs cite the statement of Judge Will of the Northern District of Illinois that

> Nothing said here is intended to hold or imply that making or aiding or assisting to cause a riot may not be pro-

scribed even though the actions taken consist merely in the exercise of First Amendment freedoms *if the words spoken or written or the actions taken under the circumstances constitute a "clear and present danger" that a riot will result and the requisite intent to cause a riot is present.*

Landry v. Daley, N.D.Ill.1968, 280 F. Supp. 968, 971[7] (emphasis supplied). Thus, the plaintiffs point out, despite the fact that the City of Miami could enact a valid anti-riot ordinance, the ordinance for which the defendants argue in this case is not the narrow, precise ordinance envisioned by Judge Will: for example it contains no "clear and present danger" limitation on its broad scope. *Compare* National Mobilization Comm. To End War in Viet Nam v. Foran, 7 Cir. 1969, 411 F.2d 934 and In re Shead, N.D.Col. 1969, 302 F.Supp. 560.[8] Neither does it limit its sanction to wilful and knowing participation in a riot. *Cf.* Original Fayette Co. Civic & Welfare League v. Ellington, W.D.Tenn.1970, 309 F.Supp. 89, 93–94.[9] To affirm the decision of the district court, we need not go so far as to declare unconstitutional the residue remaining after severing the unconstitutional segments of the statute. There is another reason why the district court did not err in declaring subsection (a) unconstitutional in its entirety.

Aside from whatever doubts may exist about the constitutionality of the anti-riot clause itself, we do not think

7. Appeal dismissed, 1968, 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392 restored to calendar for reargument, 1970, 399 U.S. 922, 90 S.Ct. 2227, 26 L.Ed.2d 788.

8. In each of those cases the court upheld the constitutionality of the anti-riot provisions of the federal Civil Rights Act of 1968, 18 U.S.C. §§ 2101, 2102. The definition of the term "riot" as used in those sections, however, had been carefully limited by Congress to apply to only those situations in which the actors' conduct constitutes a "clear and present danger" of injury to person or property. *See* 18 U.S.C. § 2101. On the basis of that express limitation each court rejected the plaintiffs' contentions that the federal anti-riot statute was vague and

overbroad. *See* National Mobilization Comm. To End War in Viet Nam v. Foran, 7 Cir. 1969, 411 F.2d 934, 938–939; In re Shead, N.D.Cal.1969, 302 F.Supp. 560, 565–567.

9. *Compare* National Mobilization Comm. To End War in Viet Nam v. Foran, 7 Cir. 1969, 411 F.2d 934, 937 ("The requirement of intent of course 'narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.'") and Douglas v. Pitcher, E.D.La.1970, 319 F.Supp. 706 ("The act limits punishment to those who 'willfully' offend or participate. The plaintiffs' arguments that the statute is overly broad and vague are not persuasive.")

that that language can reasonably be severed from the admittedly invalid portions of the ordinance. In a fine example of the tautological tendencies that sometimes afflict legislative draftsmen, the ordinance forbids the making of any "improper noise, riot, disturbance, breach of the peace or a diversion tending to a breach of the peace." It is difficult for us to say that each of the nouns in this string has a meaning distinct from that of the others; they derive much of their meaning from their use in conjunction with each other. Indeed, the word "riot" is so inextricably intertwined with the vague and overly broad words of the subsection that it is logically impossible to sever it. *See* Lazarus v. Faircloth, S.D. Fla.1969, 301 F.Supp. 266, 273; Landry v. Daley, N.D.Ill.1968, 280 F.Supp. 968, 970; *cf.* Dombrowski v. Pfister, 1965, 380 U.S. 479, 494, 85 S.Ct. 1116, 14 L. Ed.2d 22, 33. Therefore, we conclude that despite the severability section of the Miami City Code, the district court did not err in declaring subsection (a) of § 38–10 unconstitutional in its entirety.

## II.

■ Second, the defendants contend that the district court erred in declaring part of subsection (f) unconstitutional. Specifically, they argue that under the rule of Chaplinsky v. New Hampshire, 1942, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, Miami may proscribe the use of obscene, profane, or abusive speech, whether that speech is privately or publicly uttered. In the alternative, the defendants argue that subsection (f) should be held unconstitutional only to the extent that it inhibits private utterances.

In its order granting the plaintiffs' motion for summary judgment, the district court held that the language in subsection (f) prohibiting the use of "obscene or profane language in the presence of anyone else, or any indecent, insulting or abusive language to another"

denied the plaintiffs "their right of privacy, a right which in recent years has reached constitutional proportion." *See* Stanley v. Georgia, 1969, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542. We agree with the district court that subsection (f) is constitutionally defective because it makes no distinction between public and purely private speech. But we decline to hold the subsection unconstitutional only to the extent that it prohibits private utterances. We have concluded that even as applied to public speech subsection (f) is unconstitutionally vague and overbroad.

■ The void-for-vagueness doctrine[10] is essentially a requirement that penal statutes meet certain standards of specificity. The constitutional requirement of certainty in legislation derives from the due process clause of the Fifth and Fourteenth Amendments.

[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.

Giaccio v. Pennsylvania, 1966, 382 U.S. 399, 402–403, 86 S.Ct. 518, 520–521, 15 L.Ed.2d 447, 450. *See also* Wright v. City of Montgomery, 5 Cir. 1969, 406 F. 2d 867, 872; Landry v. Daley, N.D.Ill. 1968, 280 F.Supp. 938, 951. The classic due process test is thus whether the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Constr. Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322, 328. *See also* Lanzetta v. New Jersey, 1939, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888, 890; Note, Breach of the Peace and Disorderly Conduct Laws: Void for Vagueness?, 12 How.L.J. 318, 322 (1966).

---

10. *See generally*, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960);

Note, Due Process Requirements of Definiteness in Statutes, 62 Harv.L.Rev. 77 (1948).

The overbreadth doctrine, on the other hand, derives from a judicial concern for First Amendment freedoms of expression. A penal statute is void for overbreadth if "it offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" Zwickler v. Koota, 1967, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 451 (quoting from N.A.A.C.P. v. Alabama, 1964, 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325, 338). *See also* Wright v. City of Montgomery, 5 Cir. 1969, 406 F.2d 867, 872; Landry v. Daley, N.D.Ill.1968, 280 F.Supp. 938, 951–952. Despite the theoretical differences between the two doctrines, it is not uncommon to find courts condemning statutes attempting to regulate speech and association as both vague and overbroad. *See, e. g.,* N.A.A.C.P. v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405; Cox v. Louisiana, 1965, 379 U. S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. Indeed, in the area of the First Amendment, the vices of both vague and overbroad statutes are largely the same— lack of fair warning to the public, unbridled discretion in the application of the statute by law enforcement officers, and a "chilling effect" upon the exercise of First Amendment rights. *See* Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 871–875 (1970).

The crucial words of subsection (f)— obscene, profane, indecent, insulting, and abusive—are common to many breach of the peace and disorderly conduct laws. Nevertheless, in recent years several state statutes and municipal ordinances attempting to proscribe the use of obscene, profane, or abusive speech have been held impermissibly vague and overbroad.

For example, in Hunter v. Allen, N.D. Ga.1968, 286 F.Supp. 830, aff'd, 5 Cir. 1970, 422 F.2d 1158, the court held unconstitutional that portion of an Atlanta municipal ordinance proscribing the use in the presence of another of "bawdy, lewd, or obscene" words. In Pritikin v. Thurman, S.D.Fla.1970, 311 F.Supp. 1400, the court declared unconstitutional a North Miami municipal ordinance prohibiting the willful use of "profane, obscene, or offensive language, calculated to provoke a breach of the peace." And in Original Fayette Co. Civic & Welfare League v. Ellington, W.D.Tenn.1970, 309 F.Supp. 89, a three-judge court held unconstitutional a Tennessee statute making illegal the use of "rude, boisterous, offensive, obscene or blasphemous language in any public place." *See also* Brooks v. Briley, M.D.Tenn.1967, 274 F. Supp. 538, 555–556 (concurring opinion); Carmichael v. Allen, N.D.Ga.1967, 267 F.Supp. 985, 997–999; Delta Book Distributors, Inc. v. Cronvich, E.D.La. 1969, 304 F.Supp. 662.

The words "abusive," "insulting," "indecent," and their synonyms have fared scarcely better than "obscene" and "profane." In Wilson v. Gooding, N.D.Ga. 1969, 303 F.Supp. 952, aff'd, 5 Cir. 1970, 431 F.2d 855, the court struck down a Georgia statute prohibiting the use in the presence of another of "opprobrious words or abusive language tending to cause a breach of the peace." In that case the court went to the dictionary to discover the meaning of those terms:

According to Websters' New International Dictionary (2d Ed. 1941), opprobrious means: "Expressive of opprobrium; attaching disgrace; reproachful; scurrilous. * * *" Synonyms include "disgraceful, abusive, insulting, offensive." The same work lists as synonyms for insulting, the terms "insolent and offensive." Thus, in the dictionary sense of these phrases, they both include the words that are offensive, thus arguably encroaching upon the mandates of Brandenburg [v. State of Ohio, 1969, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430], Ashton [vs. Kentucky, 1966, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469], and Terminiello [v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131].

303 F.Supp. at 955. *See also* Baxter v. Ellington, E.D.Tenn.1970, 318 F.Supp. 1079.

Throughout these cases and others run several themes that are applicable to the language of subsection (f) that is under scrutiny here. First, use of the terms "obscene," "profane," "abusive," etc., does not provide the fair warning to the public that due process requires. For example, who can say what is "profane"?

Webster defines "profane" as showing disregard or contempt for sacred things. The statement, today repeated by many, that "God is dead," shows disrespect for what is universally regarded as a sacred institution, i. e., religion. Yet, that utterance, violative of the ordinance, is clearly within the protection of the First Amendment.

Pritikin v. Thurman, S.D.Fla.1970, 311 F.Supp. 1400, 1402. Similarly, the harangue of a stump speaker may be "abusive" or "insulting" to some, but to his supporters it may simply be well deserved criticism. Statutes such as these that proscribe the doing of an act in terms so vague that men of ordinary intelligence must necessarily differ as to their meaning and applicability to a particular case fail to meet the due process test. Baggett v. Bullitt, 1964, 377 U.S. 360, 367, 84 S.Ct. 1316, 12 L.Ed.2d 377, 382; Cramp v. Board of Public Instruction, 1961, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285, 293.

Second, statutes employing such vague terms sweep too broadly. Because on their face they appear to punish activities that are protected by the First Amendment, these vague and overbroad statutes effectively "chill" the exercise of First Amendment freedoms. See Dombrowski v. Pfister, 1965, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed.2d 22, 29; *cf.* N.A.A.C.P. v. Button, 1963, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed. 2d 405, 418. A stump speaker may be neither provoking any threat of violence nor intending to inflict injury on any member of the crowd; yet, depending on one's interpretation of his remarks and the statute, he may be guilty of using "profane" or "abusive" speech in the presence of another. In this predicament the speaker must make a choice: he must either incur the risk of prosecution under the ordinance or foreswear his activities. In either case "the free dissemination of ideas may be the loser." Because of the probability that free expression will in that case be the loser, the Supreme Court has said that the States may not require the speaker to make the choice. *See* Baggett v. Bullitt, 1964, 377 U.S. 360, 374, 84 S.Ct. 1316, 12 L.Ed.2d 377, 387; Landry v. Daley, N.D. Ill.1968, 280 F.Supp. 938, 952.

Finally, because of their very breadth and indefiniteness, prohibitions such as subsection (f) place in the hands of the law enforcement officers unbridled discretion in the application of the laws. All too often vague and overbroad statutes allow a stump speaker to be punished merely for peacefully expressing views unpopular with his listeners or the arresting officers. This the Constitution forbids. *See* Cox v. Louisiana, 1965, 379 U.S. 536, 551–552, 85 S.Ct. 453, 13 L.Ed. 2d 471, 482; Terminiello v. City of Chicago, 1949, 337 U.S. 1, 4–5, 69 S.Ct. 894, 93 L.Ed. 1131, 1134–1135. In the words of one court, vague and overbroad statutes "too readily permit [law enforcement officers] to make a crime out of what is protected activity." Carmichael v. Allen, N.D.Ga.1967, 267 F.Supp. 985, 999. In short, they invite enforcement based not on objective standards but on the subjective and possibly arbitrary conclusions of the law enforcement officers. *Cf.* Shuttleworth v. City of Birmingham, 1965, 382 U.S. 87, 90, 86 S.Ct. 211, 15 L.Ed.2d 176, 179; Thornhill v. Alabama, 1940, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093, 1099–1100.

Nevertheless, the defendants in this case argue that the Supreme Court's holding in Chaplinsky v. New Hampshire, 1942, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, allows Miami to punish

the public use of lewd, profane, or obscene speech. The City of Chicago unsuccessfully used the same argument in *Terminiello.* The Court in *Chaplinsky* dealt with a statute that had been narrowed by decisions of the New Hampshire Supreme Court. Under the state court's construction, no speech was forbidden " 'except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.' " *Id.* at 573, 62 S.Ct. at 770, 86 L.Ed. at 1036. Affirming a conviction under the statute, "the United States Supreme Court showed that the state had a legitimate interest in punishing profane or obscene words spoken in public under circumstances which created a substantial threat of violence." Williams v. District of Columbia, 1969, 136 U.S.App.D.C. 56, 419 F.2d 638, 645. We know of no decision of the Florida courts, however, that has so narrowed the scope of subsection (f)'s prohibition of obscene or profane speech. *See* Pritikin v. Thurmond, S.D.Fla.1970, 311 F.Supp. 1400, 1402–1403.[11] On its face the subsection is obviously applicable to far more circumstances than those in which a substantial threat of violence exists. For that reason subsection (f) cannot come within the rule of *Chaplinsky.*[12]

We therefore conclude that the district court did not err in declaring unconstitutional that part of subsection (f) prohibiting the use of "obscene or profane language in the presence of anyone else, or any indecent, insulting, or abusive language to another."

The judgment of the district court is affirmed.

11. *Compare* Wright v. City of Montgomery, 5 Cir. 1969, 406 F.2d 867. In that case this Court upheld the constitutionality of the Montgomery, Alabama, disorderly conduct ordinance. Decisions of the Alabama state courts, however, had narrowed the applicability of the ordinance to "violent and menacing conduct or conduct which tends to provoke menacing and violent conduct." *Id.* at 874–875.

12. *Compare* Hunter v. Allen, 5 Cir. 1970, 422 F.2d 1158. In *Hunter* this Court upheld the constitutionality of a portion of the Atlanta, Georgia, disorderly conduct ordinance as being within the rule of *Chaplinsky.* The subsection in question prohibited the use of " 'fighting words' directed towards any person who becomes outraged and thus creates a turmoil." *Id.* at 1160, 1166.