544 F.2d 762
 Alexander S. KOLSKI, Petitioner-Appellant,
v.
Garland WATKINS, Chief of Police of the City of Miami,
Florida, E. Wilson Purdy, Sheriff of Dade County,
Florida, and Jack Sandstrom, Director of
the Dade County Jail,
Respondents-Appellees.
 No. 75-3013.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 3, 1977.
 
 Louis M. Jepeway, Jr., Miami, Fla., for petitioner-appellant.
 Richard E. Gerstein, N. Joseph Durant, Jr., John H. Lipinski, Miami, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before BROWN, Chief Judge and JONES and GOLDBERG, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 Petitioner Alexander S. Kolski appeals from an order of the United States District Court for the Southern District of Florida denying his petition for writ of habeas corpus. On the principles of the abstention doctrine set forth in Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, we affirm.
 
 The Arrest
 
 2
 On December 24, 1973, Petitioner was arrested by two police officers of the City of Miami, Florida, for violating § 38-10 of the Municipal Code of the City of Miami, Florida, which provides that:
 
 
 3
 "Any person in the City shall be deemed guilty of disorderly conduct who:
 
 
 4
 (a) Shall make, aid, countenance or assist in making any improper noise, riot, disturbance, breach of the peace or diversion tending to a breach of the peace."[1]
 
 
 5
 Upon his arrest, Petitioner was taken to the City of Miami jail, where he signed a personal recognizance to the complaint filed against him, promising to appear in Court at the time and place to be set. He was then released on his own recognizance.
 
 State Exhaustion Efforts
 
 6
 Before trial was set, Petitioner filed a petition for writ of habeas corpus in the Circuit Court of the Eleventh Judicial Circuit for Dade County (State Circuit Court) challenging the constitutionality of the statute under which he was arrested. The State Circuit Court entered an order sustaining the writ and discharging the Petitioner from custody,[2] on the grounds that the statute was unconstitutional on its face. In reaching this conclusion, the Court noted that the identical ordinance had been declared unconstitutional by the Fifth Circuit in Livingston v. Garmire, 5 Cir., 1971, 437 F.2d 1050[3] and that an identically worded ordinance had been declared unconstitutional in Landry v. Daley, 1968, N.D.Ill., 280 F.Supp. 968.
 
 
 7
 The respondents appealed the State Circuit Court's order to the State District Court of Appeal (State Appellate Court), which vacated the State Circuit Court's order, and which quashed the writ of habeas corpus, on the ground that, for the purposes of state habeas corpus relief, Petitioner was not in the custody of the City, citing Starr v. Smith, Fla., 1955, 77 So.2d 834. The question of the constitutionality of the statute was not reached by the State Appellate Court. Petitioner's petition for rehearing by the State Appellate Court was denied.
 
 Federal Proceedings
 
 8
 Petitioner then filed the petition for writ of habeas corpus in the United States District Court. The District Court denied the writ, reasoning that:
 
 
 9
 " * * * An acquittal could result from Petitioner's pending trial, thereby rendering his instant federal claims moot. Any federal disruption at this point would certainly be an unseemly and unwarranted interference which the principle of comity between our dual system forbids * * * ."
 
 
 10
 "Petitioner's grounds for relief are of the type which the Florida courts can surely recognize and consider. Indeed, the trial court has already expressed an agreement with the merits of Petitioner's claims. Such a situation clearly dictates that this Court refrain from acting as a pretrial motion forum for a state petitioner. A pending state criminal prosecution will not be enjoined absent 'very unusual situations, * * * necessary to prevent immediate irreparable injury.' Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 * * * ." App., at 15-16.
 
 Abstention
 
 11
 In Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases[4], the Supreme Court held that a federal court must not interfere with a pending state criminal prosecution either by injunction or declaratory judgment in the absence of extraordinary circumstances[5] showing a threat of irreparable injury[6] which is both great and immediate. This policy, the Court said, is grounded in two sources:
 
 
 12
 4. The scope of the exception to the general rule of equitable restraint for "other extraordinary circumstances" has been left largely undefined by this Court. In Younger v. Harris, (401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669,) however, the Court gave one example of the type of circumstances that could justify federal intervention even in the absence of either harassment or bad-faith enforcement of a state criminal statute by quoting from Watson v. Buck, 313 U.S. 387, 402, 61 S.Ct. 962, 85 L.Ed. 1416, (136 A.L.R. 1426):
 
 
 13
 "One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."Younger, supra, 401 U.S. at 43-44, 91 S.Ct. at 750, 27 L.Ed.2d at 675.
 
 Abstention Required
 
 14
 We do not believe that the mere fact that the relief sought by Petitioner here federal habeas relief prior to a pending state criminal trial is different from the type of relief sought in Younger makes the requirements announced in Younger any less applicable to this case. There is no practical difference between granting federal habeas relief from a pending state criminal trial and enjoining the same trial. The principles of federalism and comity which underlie Younger are present in both. Thus, we conclude that Petitioner must satisfy the Younger abstention hurdles before we may give federal habeas relief.[7] Cf., e. g., Tatzel v. Hanlon, 5 Cir., 1976, 530 F.2d 1205; Glenn v. Askew, 5 Cir., 1975, 513 F.2d 61.
 
 
 15
 Here, Petitioner has not overcome those hurdles and we must therefore deny relief. First, Petitioner has not shown that he will suffer irreparable injury by having to try this case in the Florida state courts. Certainly, the cost, anxiety, or inconvenience of defending a single criminal proceeding does not amount to the irreparable injury required by Younger. Younger, supra, 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1330. Petitioner has also not shown that the state officials responsible for the prosecution are guilty of "bad faith" or "harassment" of Petitioner. Nor has Petitioner shown any other "extraordinary circumstances" which would justify federal court interference with a state pending criminal trial in this case.[8] The statute in this case, challenged as facially unconstitutional by the Petitioner, is certainly of questionable validity. But we certainly cannot say at this stage that this statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, supra, 401 U.S. at 53-54, 91 S.Ct. at 755, 27 L.Ed.2d at 681, citing Watson v. Buck, 1941, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416, 1424. As in Younger, "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it * * * ." Younger,supra, 401 U.S. at 54, 91 S.Ct. at 755, 27 L.Ed.2d at 681.
 
 
 16
 In the posture of this case, where (i) a state criminal prosecution is only pending against Petitioner, (ii) Petitioner can assert the unconstitutionality of the state statute as an affirmative defense in a state trial, (iii) Petitioner has not demonstrated that state prosecuting officials have acted in bad faith or have harassed him, (iv) Petitioner has not demonstrated any irreparable injury which will result from having to defend this case in a state trial, and (v) Petitioner has not demonstrated any other unusual or extraordinary circumstances which would justify federal judicial interference with pending state criminal proceedings, we feel that the considerations of comity and federalism which underlie Younger[9], require that we refuse to grant federal habeas relief to Petitioner until he has given the State of Florida an opportunity[10] to deal with his contentions at trial and on direct appeal[11].
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Compare with Florida Statute 856.021, a recent amendment of the Florida penal code, which essentially adopts the ALI Model Penal Code. Section 856.021 provides:
 "(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity."
 
 
 [2]
 The practical effect of the discharge from custody was to enjoin the State of Florida from trying Petitioner, and nothing more. Petitioner was never incarcerated, and was at all times free on his own recognizance. This, of course, is sufficient to establish "custody" for the purposes of federal habeas corpus relief. See Hensley v. Municipal Court, 1973, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294
 
 
 [3]
 The decision in Livingston was vacated (and hence has no precedential value) in Livingston v. Garmire, 5 Cir., 1971, 442 F.2d 1322, on the ground that the District Court, in ruling that the statute was unconstitutional, had made his ruling without the benefit of the Supreme Court's decision in Younger v. Harris, supra. Recognizing that Younger requires a showing of "irreparable injury that is both 'great and immediate; ' (that) the types of injury inherent in having to defend against a single criminal prosecution * * * do not themselves constitute 'irreparable' injury * * * (and that to all) pending state criminal prosecution, the plaintiff must show in addition 'bad faith, harassment, or any other unusual circumstance that would call for equitable relief,' " the Court of Appeals vacated and remanded the case to the District Court for proceedings consistent with the principles announced in Younger
 
 
 [4]
 Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792
 
 
 [5]
 "The policy of equitable restraint expressed in Younger v. Harris, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights. See Steffel v. Thompson, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505. Only if " extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. 4 But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation."
 " 'It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " 401 U.S., at 53-54, 91 S.Ct. 746, at 755, (27 L.Ed.2d 669.)
 The Court then stated: "Other unusual situations calling for federal intervention might also arise, but there is no point in our attempting now to specify what they might be." Id., at 54, 91 S.Ct. at 755, (27 L.Ed.2d 669.)
 Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488, supplied another example of such "extraordinary circumstances." In that case the Court found it unnecessary to decide whether the rule of Younger v. Harris applies with the same force when state civil, rather than criminal, proceedings are pending because "the predicate for a Younger v. Harris dismissal was lacking . . . . (T)he appellees alleged, and the District Court concluded, that the State Board of Optometry was incompetent by reason of bias to adjudicate the issues pending before it. If the District Court's conclusion was correct in this regard, it was also correct that it need not defer to the Board." 411 U.S. at 577, 93 S.Ct. 1689, at 1697, (36 L.Ed.2d 488.)
 Kugler v. Helfant, 1975, 421 U.S. 117, 124-25, 95 S.Ct. 1524, 1530-31, 44 L.Ed.2d 15, 24-25, reh. denied, 421 U.S. 1017, 95 S.Ct. 2425, 2426, 44 L.Ed.2d 686.
 
 
 [6]
 "Although the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute "irreparable injury" in the "special legal sense of that term," id., at 46, 91 S.Ct. 746, 751 (27 L.Ed.2d 669), the Court in Younger left room for federal equitable intervention in a state criminal trial where there is a showing of "bad faith" or "harassment" by state officials responsible for the prosecution, id., at 54, 91 S.Ct. 746, 755 (27 L.Ed.2d 669), where the state law to be applied in the criminal proceeding is " 'flagrantly and patently violative of express constitutional prohibitions,' " id., at 53, 91 S.Ct. 746, 755, (27 L.Ed.2d 669), or where there exist other " extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." Ibid. In the companion case of Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701, the Court explained that "(o)nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." Id., at 85, 91 S.Ct. 674, 677, (27 L.Ed.2d 701). See Mitchum v. Foster, 407 U.S. 225, 230-231, 92 S.Ct. 2151, 2155-2156, 32 L.Ed.2d 705."
 Kugler v. Helfant, supra, 421 U.S. at 124, 95 S.Ct. at 1530, 44 L.Ed.2d at 24.
 
 
 [7]
 We emphasize that the Younger abstention doctrine has been given broad application by the Supreme Court in recent cases. For instance, it has been extended to civil cases "in aid of and closely related to criminal statutes." Huffman v. Pursue, Ltd., 1975, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482; and to the military justice system, Schlesinger v. Councilman, 1975, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591
 
 
 [8]
 We assume, without deciding, that overcoming the Younger hurdles is available in a habeas, not injunctive, proceeding
 
 
 [9]
 The Supreme Court has recently underscored the importance of federalism and comity, as well as the ability of state courts to give full and adequate protection to defendants' federal constitutional rights, in Stone v. Powell, 1976, --- U.S. ----, 96 S.Ct. 3037, 49 L.Ed.2d 1067, which held that federal courts are precluded from granting federal habeas relief to state prisoners on Fourth Amendment grounds, where the State has given the defendant an opportunity for full and fair adjudication of those claims. See also id., at ----, 96 S.Ct. at 3051, 49 L.Ed.2d at 1087-88 n.35: "Despite differences in institutional environment and the unsympathetic attitude to federal constitutional claims of some state judges in years past, we are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."
 
 
 [10]
 Petitioner suggests that because both the Florida state circuit and appellate courts have had an opportunity to rule on Petitioner's state habeas petition, the State of Florida has been given sufficient opportunity to rule on the constitutionality of this statute. We disagree. In refusing to rule on Petitioner's constitutional argument because the case could be disposed of on the non-constitutional ground that the Petitioner did not satisfy the "in custody" requirements of Florida state law, the Florida appellate court did not "use up" its only chance to rule on Petitioner's constitutional claim. We will not penalize the Florida appellate courts for following the laudable practice of not disposing of cases on constitutional grounds when they can be disposed of on non-constitutional grounds. This wise policy one followed by the Federal Courts of Appeals and the Supreme Court of the United States, as well should not be discouraged by federal interference with state judicial proceedings before the state courts have been squarely and inescapably faced with a constitutional issue, as they will be when Petitioner raises his constitutional claim as a defense in his state trial
 Petitioner also asserts that the statute challenged in this petition is "clearly constitutional" under Florida law and that it would be "totally useless" for him to return to the state courts. We disagree. Where, as here, three federal courts (see text and notes at note 3 supra ) have recently declared this statute (or an identically worded statute) unconstitutional, "we feel that there is a possibility that the Florida Supreme Court may change its position, or at least should be given the opportunity." Glenn v. Askew, 5 Cir., 1975, 513 F.2d 61, 62. See, e. g., Spears v. State, Fla., 1976, 337 So.2d 977, effectively overruling Jones v. State, Fla., 1974, 293 So.2d 33, by holding, in light of recent Florida Supreme Court and United States Supreme Court decisions, that a statute prohibiting the public use of "indecent or obscene language" was void for overbreadth. Cf. Layton v. Carson, 5 Cir., 1973, 479 F.2d 1275, 1276 (a federal District Court has the authority to dismiss a federal habeas corpus petition for failure to exhaust state remedies if the State's highest court has recently rendered an adverse opinion in an identical case "and if there is no reason to believe that the state court will change its position.")
 
 
 [11]
 If, of course, Petitioner is convicted and a state statute is held constitutional, Petitioner after exhaustion will then be free to institute new federal habeas proceedings