Emilio "Chito" DAVILA, Sr., Judge of the County Court at Law of Webb County, Texas, Plaintiff,

v.

The STATE OF TEXAS, and Charles R. Borchers, District Attorney for the 49th Judicial District, in said Capacity and Individually, Defendants.

Civ. A. No. L–80–20.

United States District Court,
S. D. Texas,
Laredo Division.

May 5, 1980.

Oscar J. Pena, Julio Garcia, Laredo, Tex., for plaintiff.

Olivero Canales, Laredo, Tex., for defendant Borchers.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAZEN, District Judge.

Plaintiff has filed suit claiming, among other things, that the Defendant has acted under color of law to violate certain of Plaintiff's constitutional rights, thus creating a cause of action under 42 U.S.C. § 1983. An evidentiary hearing was held on May 2, 1980. These Findings of Fact and Conclusions of Law are prepared pursuant to Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Plaintiff, Emilio "Chito" Davila, Sr., is the duly elected judge of the Webb County Court-at-Law. He was a successful candidate for the office in the Democratic primary in June, 1978, won the office without opposition in the general election of that year and assumed his duties on January 1, 1979. The Webb County Court-at-Law was created by an act of the Texas Legislature, Article 1970–360, V.A.T.S. Generally, the Court has jurisdiction of civil cases if the amount in controversy does not exceed $10,-000.00 and also has jurisdiction in divorce cases, probate cases and criminal misdemeanor cases.

2. Defendant Charles R. Borchers is the duly elected District Attorney for the 49th Judicial District of Texas, which district includes the County of Webb. On June 11, 1979, Defendant Borchers filed in the 111th District Court of Webb County, Texas, an original petition for removal seeking to remove Judge Davila from office on the grounds of incompetency pursuant to Article 5972, V.A.T.S., and official misconduct pursuant to Article 5973, V.A.T.S. The suit was filed "on the relation of" one Leon Ramirez, Jr. A first amended original petition for removal was filed on November 7, 1979, this time on the relation of Leon Ramirez, Jr. and George Narvaez. The suit is Cause No. 31,556 in the 111th District Court of Webb County, Texas, and is styled "The State of Texas on the Relation of Leon Ramirez, Jr., et al. vs. Emilio "Chito" Davila, Sr."

3. The removal suit was filed pursuant to the provisions of Article 5970, V.A.T.S., which generally provides that a district judge may remove a county official for "incompetency, official misconduct or becoming intoxicated by drinking intoxicating liquors, as a beverage, whether on duty or not."

4. In essence, the removal suit is grounded upon three factual propositions. First, that Judge Davila, on several occasions, appointed his son-in-law, attorney Roger C. Rocha, as an attorney ad litem in civil cases and as a defender in criminal cases, thereafter ordering that Rocha be compensated from public funds. It is alleged that this constituted official misconduct within the meaning of Article 5973. Second, that Judge Davila either knowingly or through gross ignorance exceeded his authority on May 12, 1979 by verbally ordering the arrest of relator Leon Ramirez, Jr. for a misdemeanor offense upon the oral complaint of certain relatives of Judge Davila. The offense was one not committed in the presence of or within the view of Judge Davila. It is thus alleged that the verbal arrest order violated the Texas Code of Criminal Procedure and the due process rights of relator Ramirez. Third, the removal petition alleges that on October 20, 1979, Judge Davila became "or may have become" intoxicated by drinking intoxicating liquor as a beverage, thus violating Article 5970. This is based upon an incident wherein Judge Davila was involved in an automobile collision and thereafter failed to stop his vehicle to determine the extent of the injuries or investigate the property damage in connection with the other vehicle.

5. The removal suit has proceeded through a routine pre-trial course with the docket sheet reflecting such entries as pleas to the jurisdiction, special exceptions, pleas in abatement, motions for continuance, etc. In each case either hearings have been held in state court or appropriate orders issued or both. (See Plaintiff's Exhibit 5). The presiding state district judge is Hon. Joe E.

Kelly, a visiting judge from Victoria, Texas, apparently in compliance with Article 200a, Section 6, V.A.T.S., providing that a judge from another county must be named to preside over a removal suit.

6. Jury trial in Cause No. 31,556 in the 111th District Court was scheduled to begin on Monday, May 5, 1980. The instant suit was filed April 24, 1980, asking that the Court temporarily and then permanently enjoin Defendant Borchers from proceeding with the state case and also asking this Court to declare Articles 5970 and 5972, V.A.T.S., to be unconstitutional. The suit recognizes the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) but alleges that the Defendant Borchers has a personal hatred of Plaintiff Davila, has filed the removal suit in bad faith and to harass Davila, and that therefore a recognized exception to *Younger* exists in this case.

7. There is personal ill-will between Plaintiff Davila and Defendant Borchers. Davila unsuccessfully opposed Borchers as a candidate for district attorney in the Democratic primary in 1976 and there is evidence that the political campaign was hotly contested. Within a few days after assuming his judicial office in 1979, Judge Davila publicly threatened to hold Borchers in contempt and to place him in jail. This arose from a longstanding dispute between District Attorney Borchers and the office of the County Attorney as to which officer was responsible for handling misdemeanor criminal cases, juvenile cases and other cases in the Webb County Court-at-Law. Judge Davilla insisted that the District Attorney's office assume responsibility for these cases and Defendant Borchers declined to do so. Defendant Borchers filed a writ of mandamus proceeding in the 111th District Court to counteract an injunction issued against him by Judge Davila. Ultimately, the dispute was settled after a meeting of several county officials. The entire affair received considerable news media coverage in early January, 1979. (Plaintiff's Exhibits 1, 2 and 3).

8. In June, 1979, further publicity resulted from a dispute between Borchers and Davila as to the disposition of misdemeanor cases in the Webb County Court-at-Law. Essentially, Borchers apparently complained that Davila was biased against his office while Davila countered that Borchers' staff was unprepared. The result was that most, if not all, of the criminal misdemeanor cases prosecuted by the District Attorney's office in the Webb County Court-at-Law resulted in acquittals. (Plaintiff's Exhibit 4).

9. Judge Davila testified that between January and May, 1979, he did on several occasions appoint his son-in-law to serve as a criminal defense attorney and as attorney ad litem in civil cases and then signed requisitions approving payment of fees from the County treasury. He testified that he did not believe this conduct to violate the state nepotism statutes. *See* Article 5996a, *et seq.*, V.A.T.S.

10. Judge Davila further testified that in May, 1979, he became aware of a fracas involving his nephew, niece and son and also Leon Ramirez, Jr. The incident did not occur in the presence of or within the view of Judge Davila, but based upon oral reports he "suggested" to Sheriff's deputies that they arrest Ramirez for a misdemeanor offense of assault.

11. Judge Davila also testified that on or about October 20, 1979, he was involved in an automobile accident and thereafter left the scene of the accident. In this connection, Judge Davila retained attorney Rocha to represent him in connection with whatever resulting charges might be filed. Attorney Rocha and Defendant Borchers subsequently entered into plea bargain discussions to the effect that the case would be handled as a traffic violation in Municipal Court. Attorney Rocha was of the belief that this disposition would end the matter. Thereafter, however, the original removal petition was amended to include a count based upon the traffic incident. Although the allegations in the amended petition do not rely upon the fact of conviction but rather are based upon the allegation of

intoxication, nevertheless attorney Rocha was of the opinion that this conduct by Defendant Borchers violated the spirit of the plea bargain agreement.

12. Relator Leon Ramirez, Jr., after learning that the relatives of Judge Davila were causing criminal charges to be filed against him as a result of the May, 1979 fracas, subsequently retained the services of attorney Carlos Zaffirini, Jr. of Laredo, Texas. Zaffirini and Borchers are married to sisters. Ramirez told attorney Zaffirini that he wanted to do something against Judge Davila because of what Judge Davila had done to him. Zaffirini advised Ramirez that Judge Davila was immune from civil suit under the law and that Ramirez's only recourse would be a removal petition. Ramirez then indicated that he wished to file such a petition. Zaffirini assisted Borchers in researching at least some aspect of the law pertaining to removal petitions.

13. At a public meeting of some kind in May, 1979, Borchers first indicated to Davila that he suspected a violation of the nepotism statutes. Davila did not thereafter appoint attorney Rocha to any further cases with one exception. That exception involved a case where attorney Rocha was already familiar with the facts of the criminal case, for some reason, and an assistant district attorney handling the prosecution of the case suggested to Judge Davila that Rocha be appointed.

14. Sharon Trigo is a practicing attorney who was an assistant district attorney from May, 1975 to November, 1979. Together with her husband George, she complained to Defendant Borchers some time either in 1978 or 1979 that the Chief of Police of the Laredo Police Department had violated the nepotism laws by appointing a brother-in-law as a police officer. George Trigo prepared a removal petition and caused it to be signed by a local attorney. The Trigos urged Defendant Borchers to proceed on the matter but he declined to do so. Trigo was also of the opinion that Borchers was unduly critical of Davila for the poor conviction rate in misdemeanor cases in the Webb County Court-at-Law.

15. George Narvaez is a Laredo police officer who is the other relator in the first amended removal petition. He was the police officer who was first called upon to investigate the automobile collision on October 20, 1979 and personally witnessed Judge Davila leaving the scene. He was asked by a member of the District Attorney's staff to sign the amended removal petition. Although he apparently agreed to do so willingly, the original idea was not his.

16. Although the amended removal petition contains affidavits from both relators, Ramirez and Narvaez, to the effect that all facts and allegations contained in such petition are true and correct, neither relator has personal knowledge of all facts set forth in the petition. Relator Ramirez's personal knowledge is confined to the arrest incident of May 12, 1979, and Narvaez's personal knowledge is confined to the traffic incident of October 20, 1979. Both relators, however, were shown complete files by the District Attorney reflecting court appointments and voucher payments with respect to attorney Rocha.

17. Attorney Marcel C. Notzon is a practicing attorney in Laredo, Webb County, Texas. At some unspecified time after the original removal petition was filed, Notzon took it upon himself to attempt to settle the conflict between Borchers and Davila. He felt that the litigation was causing turmoil in the community and asked Borchers to voluntarily terminate the proceedings. Borchers replied to the effect that Davila had "torpedoed" the settlement of the earlier dispute between the parties concerning handling of cases in the County Court-at-Law (see Finding of Fact No. 7) and that Davila had "stabbed Borchers in the back."

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1343.

2. The normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions. *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669

(1971). Interference with pending state court proceedings by way of a declaratory judgment is subject to the same restrictions. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

3. Although the *Younger* doctrine was originally announced in connection with state criminal cases, it has now been clearly extended to civil proceedings "in which important state interests are involved." *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). This would also include state proceedings closely related to criminal statutes, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or involving other vital concerns such as enforcement of contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). The Court concludes that the instant case, involving a removal petition filed by a state district attorney against a state judge in a state district court, is clearly within the ambit of the *Younger* doctrine.

4. One recognized exception to the *Younger* doctrine involves state prosecution under a statute that is flagrantly and patently violative of expressed constitutional prohibitions in every clause, sentence and paragraph and in whatever manner and against whomever any effort might be made to apply it. 401 U.S. at 53–54, 91 S.Ct. at 754–755; *Kolski v. Watkins*, 544 F.2d 762 (5th Cir. 1977). The Court concludes that neither Articles 5970 nor 5972 meet the foregoing test and therefore that exception is not applicable here.

5. The second broad exception to the *Younger* rule is the bad faith or harassment exception. Precedent suggests that this exception can take several forms, and the Court will now endeavor to match the facts of this case against those several variations. First, the Supreme Court in *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) described the exception to involve "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction." *Id.* at 85, 91 S.Ct. at 677. *See also Kugler v. Helfant*, 421 U.S. 117, 126 at

fn. 6, 95 S.Ct. 1524, 1531 at fn. 6, 44 L.Ed.2d 15 (1974). The Court cannot say that Defendant Borchers has no hope of obtaining a valid conviction in the removal case, particularly with respect to the allegations concerning violation of the nepotism laws and the verbal arrest order. The fact that Davila would be required to defend himself in a single state court prosecution is not sufficient to create an exception to the *Younger* rule. 401 U.S. at 46, 91 S.Ct. at 751.

6. The second variation under the bad-faith exception involves situations where a state prosecution is directly designed to retaliate against or deter one from exercising a protected constitutional right. *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979). Plaintiff does not claim that this situation exists in the present case and the Court can find no evidence of it.

7. A third variety of bad faith involves unreasonably severe and harsh state prosecutorial conduct when balanced against a relatively minor offense, together with possible overtones of racial or ethnic prejudice. This was the situation in *Duncan v. Perez*, 445 F.2d 557 (5th Cir. 1971) where a simple slap on the wrist of a white youth by a black youth resulted in multiple arrests, repeated resettings of high pre-conviction bail, an unusually severe sentence, and an unlawful demand for a double appeal bond, together with the arrest of the defendant's attorney on a baseless charge of the unlawful practice of law. No such unbalanced oppression is evident here. Instead, as noted above, this case has followed an orderly pre-trial schedule and Judge Davila, with his attorneys, has apparently had every opportunity to assert various defenses and objections to the proceedings. Indeed, Article 5982, V.A.T.S., purports to give a state district judge the power to temporarily suspend Judge Davila even from the moment that the original citation was issued in the state case and yet there is no evidence that Defendant Borchers sought any such relief.

8. The next variation under the bad faith exception appears to be one where the overall totality of the circumstances are such as to warrant a finding of bad faith.

*Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972). There, the district court had specifically found that he was not dealing with a single good faith prosecution but instead characterized the facts as being "unique and bizarre". Among other things in the *Shaw* case, there was serious question from the outset as to whether the district attorney ever had a basis to believe the defendant guilty, the prosecutor extracted information from his one key witness by using a truth serum and hypnosis, the prosecution was funded by private sources, the prosecutor hoped to profit from the proceedings through the writing of a book, the defendant was originally arrested under staged circumstances with national news media present, and after summarily losing a lengthy criminal trial against the defendant, the prosecutor immediately filed perjury charges. There is simply nowhere near that kind of picture presented in the instant case.

9. The best that can be said for the present fact situation is that the Defendant Borchers and the Plaintiff Davila do not like each other. It is therefore possible to speculate that if his personal feelings toward Davila were different, Borchers might perhaps prosecute the state case less zealously or perhaps even take some action short of seeking removal. The Court is unpersuaded that these subjective elements are sufficient to invoke the rare exception to the *Younger* doctrine, especially when the state court proceedings furnish ample opportunity for Judge Davila to assert all of his defenses including his federal constitutional claims. Regardless of the personal animosities involved, the evidence is that Defendant Borchers is prosecuting a case with legitimate possibility of success, that he is invoking the provisions of a long-standing Texas statute, and that he is following normal state trial procedures without any objective signs of harassment or oppression.

10. The final broad exception to the *Younger* rule is said to be "other extraordinary circumstances" that render the state court incapable of fully and fairly adjudicating the federal issues before it. This exception requires a "extraordinarily pressing need for immediate federal equitable relief". *Kugler v. Helfant*, 421 U.S. 117, 124–125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1974). This particular exception has never been defined by the Supreme Court but nothing has been presented to this Court to warrant the conclusion that such extraordinary circumstances exist. Moreover, the Fifth Circuit has clearly stated that a party may not invoke federal court aid without first testing state court remedies and finding them wanting. Even the refusal by the state trial judge to consider federal claims does not alter the duty of the plaintiff to pursue state remedies. Errors or mistakes by the state trial court are not "special circumstances" warranting an exception to the *Younger* rule. The federal court cannot be used to review the judgment of a state trial court but instead the plaintiff must proceed through normal state channels. *Duke v. State of Texas*, 477 F.2d 244 (5th Cir. 1973).

11. The Court therefore concludes that under the doctrine of *Younger v. Harris*, it must abstain and decline to grant the requested injunctive or declaratory relief with respect to the pending state court removal case.

12. To the extent that any findings of fact should properly be deemed conclusions of law, or vice versa, they are adopted as such.

## JUDGMENT

On May 2, 1980, came on to be heard the above cause. After having considered the pleadings, the evidence, and the arguments of the attorneys, and for the reasons more particularly set forth in the Findings of Fact and Conclusions of Law filed this day, the Court has concluded that it must abstain from exercising its jurisdiction in this case and that Plaintiff's complaint must be dismissed. It is accordingly ORDERED that Plaintiff's complaint be and the same is hereby dismissed without prejudice.

■ Prior to entering its written findings and conclusions this date, the Court orally announced its preliminary findings and conclusions in open court at the end of the evidentiary hearing. At that time, Plaintiff indicated his desire and intention to appeal the decision of the Court and invoking the provisions of Rule 62(c), Federal Rules of Civil Procedure, asked the Court to enter an injunction against the pending state case to preserve the status quo while the Plaintiff perfected his appeal. Technically, Rule 62(c) is not properly invoked until "an appeal *is taken*" (emphasis supplied). In this case, Plaintiff has not yet filed formal notice of appeal and indeed this judgment is just now being delivered to the Clerk for entry. Because the state court proceeding in question was scheduled to begin this morning at 9:00 a. m., any further delay with respect to Plaintiff's request would render the entire matter moot. For that reason, the Court heard Plaintiff's request in open court at the conclusion of the evidentiary hearing as well as the arguments from the attorneys for both parties.

■ As a general rule, four factors are to be evaluated by the Court in deciding whether or not to stay its judgment pending appeal. These factors are:

(1) a likelihood that the plaintiff will prevail on the merits of the appeal;

(2) irreparable injury to the plaintiff unless the stay is granted;

(3) no substantial harm to other interested parties if the stay is granted; and

(4) no harm to the public interest.

*Fortune v. Molpus*, 431 F.2d 799 (5th Cir. 1970); *Pitcher v. Laird*, 415 F.2d 743 (5th Cir. 1969).

■ In this case, the Court is convinced that it has correctly abstained and therefore does not believe that there is a strong likelihood that the Plaintiff will prevail upon appeal. Also, the entire premise for the *Younger* doctrine is the reluctance of federal courts to enjoin state proceedings based on public policy considerations. To abstain initially but then enjoin the state proceedings during the course of a lengthy appeal would seem to be paying mere lip service to the doctrine. On the other side of the scale, however, Plaintiff urges that if this Court is wrong, he stands to be irreparably injured because under state law there is some authority for the proposition that if the plaintiff suffers an adverse verdict at the trial level, he can be removed from office even though he may appeal to a higher state court. Article 5982, V.A.T.S.; *McDaniel v. Phillips*, 3 S.W.2d 1117 (Tex. Civ.App.1928, no writ hist.). Plaintiff urges, therefore, that considering the extreme importance of this case to his personal and political career, he be given at least an opportunity to perfect an appeal from the judgment of this Court and to convince the Fifth Circuit Court of Appeals to issue its own relief pursuant to Rule 8(a), Federal Rules of Appellate Procedure. The Defendant, District Attorney Borchers, responded in open court that he was not opposed to a reasonable delay for this purpose and expressed the belief that no substantial harm to the public interest would result. Considering all of the foregoing circumstances, therefore, the Court has concluded that it will grant an injunction under Rule 62(c), Federal Rules of Civil Procedure, but only for the limited period of thirty (30) days, in order to afford Plaintiff an opportunity to formally perfect his appeal from the judgment of this Court and to thereafter seek injunctive relief from the Fifth Circuit Court of Appeals.

Accordingly, it is ORDERED that Defendant Charles R. Borchers, his assistants, agents, servants, employees and all persons in active concert and participation with him, be and the same are hereby restrained and enjoined from taking any steps whatsoever, either directly or indirectly, to prosecute Cause No. 31,556 presently pending in the 111th Judicial District Court of Webb County, Texas; provided, however, that Plaintiff shall immediately post a bond in the amount of FIVE HUNDRED DOLLARS ($500.00) to secure Defendants for costs and expenses they might incur or suffer from the granting of this injunction should it be hereafter decided that said injunction was wrongfully issued or should

the Court of Appeals decline to issue its own injunction pending appeal. It is further expressly ORDERED that this injunction shall dissolve and be of no further force and effect at 5:00 p. m. on Monday, June 2, 1980.